Brown *v*. The First National Bank of Indianapolis.

No. 13,483.

BROWN *v*. THE FIRST NATIONAL BANK OF INDIANAPOLIS.

PROMISSORY NOTE.— *Not Negotiable.*— *Contract of Forbearance.*— *New Contract.*—Where the maker of a promissory note, not governed by the law merchant, agrees with the assignee thereof, to whom the note was assigned before maturity, that if the latter will extend the time of payment for a definite time he will pay the same at the expiration of said period, and the time is so extended, such promise of the maker constitutes a new contract, binding in law, and capable of enforcement, though the maker had a good defence to the note before its assignment.

SAME.—*Blank in Instrument.*—*Power of Payee or Endorsee to Fill.*—Where, in a promissory note, there is a blank space immediately preceding the words "promise to pay," apparently intended to be filled with the pronoun "I" or "we," the payee, or any endorsee, may fill such space with the proper pronoun, without impairing the validity of such note.

PLEADING.—*Reply.*—Where any paragraph of answer contains new matter, the plaintiff may, in separate paragraphs of reply, set up any fact which supports the complaint and avoids the new matter in such paragraph of answer.

From the Montgomery Circuit Court.

*T. E. Ballard, E. E. Ballard* and *M. E. Clodfelter,* for appellant.

*R. Hill, R. N. Lamb, T. H. Ristine* and *H. H. Ristine,* for appellee.

Howk, J.—This was a suit by appellee, as plaintiff, against appellant, Brown, as defendant, in a complaint of two paragraphs, each counting upon a promissory note in the sum of $800, each dated November 12th, 1884, executed by appellant, Brown, payable respectively in 90 and 180 days after date to one B. D. Brown, or order, and by him endorsed to appellee. The two notes were precisely alike, except as to the length of time each had to run before maturity. In the first paragraph of complaint the note declared upon was in the words and figures following, to wit:

" $800.          INDIANAPOLIS, IND., Nov. 12th, 1884.

" Ninety days after date — promise to pay B. D. Brown,

of Indianapolis, Indiana, or order, eight hundred dollars, and five per cent. thereon for attorney's fees, value received, without any relief whatever from valuation or appraisement laws. The drawers and endorsers severally waive presentment for payment, protest and notice of protest and non-payment of this note, and all defences on the ground of any renewal or extension of the time of its payment that may be given by the holder or holders to them or either of them. Negotiable and payable at the First National Bank of Indianapolis, Ind., with eight per cent. interest until paid.

(Signed) " GEO. D. BROWN."

The cause was put at issue and tried by the court, and, at defendant's request, the court made a special finding of the facts and thereon stated its conclusions of law in plaintiff's favor, and, over defendant's exceptions to the conclusions of law, the court rendered judgment accordingly.

Appellant's learned counsel first complain in argument of the alleged error of the court below in its conclusions of law upon its special finding of facts.

The facts found by the court were, substantially, as follows :

On the 12th day of November, 1884, the defendant executed to B. D. Brown the two promissory notes described in the complaint herein.

3. Both of said notes were assigned by B. D. Brown, by endorsement in writing, to the plaintiff before either of them had become due.

4. Both of said notes, at the time of the commencement of this suit, were due and remained wholly unpaid.

5. The amount due on said notes is $1,870.05, of which $89.05 is plaintiff's attorney's fee.

6. On or about the 1st day of July, 1882, and from that time until about November 1st, 1883, one Richard L. Boyd and one Benjamin D. Brown were partners in business under the firm name of Brown & Boyd. Said Benjamin D. Brown is the payee of the notes sued on herein. Said firm of Brown

& Boyd were engaged at Indianapolis, Indiana, in the business of buying and selling grain on commission, and of storing grain. For the purpose of carrying on their said business they leased what was known as the "Western Elevator," at Indianapolis, and this elevator was the principal place used by them in storing grain received by them to be stored.

7. About the 1st day of July, 1882, defendant, George D. Brown, entered into an agreement with said firm of Brown & Boyd, by the terms of which said Brown & Boyd agreed to receive from the defendant wheat, which he should ship to them to be stored, and store the same for him. It was further agreed between said firm and defendant that said Brown & Boyd should advance or loan to the defendant, from time to time, as said wheat should be received, certain sums of money, bearing a certain proportion to the market value of the wheat at the time of its reception. Defendant agreed to pay interest on said loans at the rate of seven per cent. per annum. Brown & Boyd also agreed to pay the freight charges for the shipment of said wheat, to keep it insured and to deliver it to George D. Brown whenever he should call for it. Defendant agreed to pay said loans, freight charges and insurance whenever said wheat should be delivered to him, or sold on his order. He also agreed to pay said Brown & Boyd two cents per bushel per month for the storage of said wheat. Said Brown & Boyd were to have a lien on said wheat, and to hold the same in pledge as security for the payment of said loans, freight, insurance and storage charges. If said loans, freight, insurance and storage charges should at any time amount to within five cents on the bushel of the value of the wheat in store, said Brown & Boyd should have the right to sell said wheat at the market-price, and, after deducting the amount due thereon, pay the remainder, if any, to the defendant, unless defendant should pay to them a sum sufficient to make the margin equal to five cents per bushel on the wheat stored.

8. In pursuance of said agreement, defendant shipped to

said Brown & Boyd about thirty thousand bushels of wheat to be stored by them for him.

9. Before the notes in suit were executed, the firm of Brown & Boyd dissolved, and the business was continued by said B. D. Brown with the defendant, under the same agreement.

10. Said notes were executed to said B. D. Brown by defendant for charges which said B. D. Brown claimed were due from defendant, on account of wheat stored for him by the firm of Brown & Boyd, and by the said B. D. Brown.

11. Neither said firm of Brown & Boyd, nor the said B. D. Brown, stored or kept in store any wheat for defendant, either of the wheat shipped to them by him to be stored, or of like kind in grade or quality.

12. In November, 1884, said B. D. Brown failed in business, and, at the time of such failure, he did not have in store for the defendant a single bushel of wheat.

13. No warehouse receipts were ever issued to the defendant.

14. For all the wheat shipped by defendant, warehouse receipts were issued to Brown & Boyd, and, after the dissolution of the partnership, to B. D. Brown, by the Western Elevator Company, which, by the terms of its agreement with Brown & Boyd, and B. D. Brown, kept control of the issuing of warehouse receipts.

15. The assignment of the notes in suit to the plaintiff was based upon a valuable consideration, and, at no time prior to the commencement of this suit, did plaintiff have any knowledge of any defence to said notes, or of any defect or infirmity therein.

16. The firm of Brown & Boyd, and said B. D. Brown, had advanced or loaned to the defendant, in accordance with said agreement, sums of money at different times which, in the aggregate, with the interest thereon, amounted at the time the notes in suit were executed to within a little less

than $100 of the then market value of the wheat, upon which storage was charged.

17. After the said notes were assigned to the plaintiff, and before the note first maturing became due, the defendant requested of the plaintiff an extension of the time of payment of said first note for a period of three weeks, and promised and agreed with the plaintiff to pay both of said notes at the expiration of the time of such extension, if such extension of the time of payment should be granted. Defendant further agreed that, if such extension of the time of payment were given, he would within three weeks ship to one Philip E. Mitchner, of Indianapolis, a sufficient quantity of wheat to pay both of said notes; and said Mitchner then and there agreed with the plaintiff that, in consideration that the time of payment of said note should be so extended as aforesaid, he, the said Mitchner, would apply the proceeds and value of wheat, which should be so shipped to him by defendant, towards the payment and satisfaction of both said notes; and in consideration of the promises so made, plaintiff agreed to extend the time of payment of said note first maturing, for three weeks, and did extend the time of payment in accordance with such agreement.

Upon the foregoing facts, the court stated the following conclusions of law, to wit:

" 1. The notes sued on are not negotiable under the law merchant, and are subject to all defences in the hands of the assignee that they would be in the hands of the payee.

" 2. Said notes were executed without any consideration whatever.

" 3. There was an extension of the time of payment of said first note, given to defendant by plaintiff for a definite time on a sufficient consideration.

" 4. By virtue of said extension of time and the agreement of defendant to pay said notes at the expiration of said extension of time, defendant became liable to plaintiff for the payment of both of said notes.

" 5. The plaintiff is entitled to recover of the defendant the sum of $1,870.05, without relief from valuation or appraisement laws."

In discussing the alleged error of the court below, in its conclusions of law, appellant's learned counsel very earnestly insist that, as the court had found that the notes in suit were executed in settlement of an account wholly fraudulent, and without any consideration whatever, and were not negotiable under the law merchant, it was error to conclude, as matter of law, that appellee's agreement to extend the time of payment of the note first maturing, for a definite period of time, constituted a valid and sufficient consideration for appellant's promise to pay both of said notes. It will be noted that this contention of counsel is largely rested upon their assumption that the trial court correctly concluded, as matter of law, that the notes in suit were not negotiable under the law merchant. It is apparent that this conclusion of law is based solely upon the terms of the notes sued on, and upon no other fact or facts found by the court. Our statute, in force since July 5th, 1861, provides that " notes payable to order or bearer in a bank in this State shall be negotiable as inland bills of exchange, and the payees and indorsees thereof may recover, as in case of such bills." Section 5506, R. S. 1881.

The written instruments sued on in this action, by the express terms thereof, are negotiable and payable to order in a bank in this State, and if they are not negotiable as inland bills of exchange under the law merchant, it is solely for the reason that such instruments are not " notes," within the meaning of that word as used in our statute. The word " note " or " notes," is not defined in our statutes, but, doubtless, is used therein in its legal sense. A note is a written promise, made by a certain person, to pay a certain sum of money to a certain person, at a certain time.

In *Glidden* v. *Henry*, 104. Ind. 278, the instrument sued

on was in form a promissory note, and was payable to order in a bank in this State, but the terms of the instrument were such as to render the time of its payment uncertain and conditional; and it was there held, and correctly so, we think, that such instrument was not negotiable as an inland bill of exchange, but that the endorsee thereof, for value, and before maturity, took the same subject to all equities and defences existing between the maker and payee of the instrument. In stating as its first conclusion of law in the case in hand, " that the notes sued on are not negotiable under the law merchant," it may well be supposed that the court below regarded the case cited as decisive of the question in favor of such conclusion, although there is a marked and material difference, as it seems to us, between the terms of the instruments sued on in that case and those in suit in the case we are now considering. Waiving this point, and conceding, but by no means deciding, that the notes now in suit are not negotiable under the law merchant as inland bills of exchange, we proceed now to the consideration of the error first insisted upon as a ground for the reversal of the judgment below by appellant's counsel, namely: That the court erred in holding, as matter of law, that appellee's agreement to extend the time of payment of the note first maturing was a valid and sufficient consideration for appellant's promise to pay both of said notes.

We are of opinion that there is no error in this conclusion of the trial court. Upon the theory on which this cause was tried and decided below, it does not differ substantially, upon the point under consideration, from *Jaqua* v. *Montgomery*, 33 Ind. 36 (5 Am. R. 168).

In the case cited it appeared that the assignee of a promissory note, not governed by the law merchant, to whom it was assigned before maturity, after it became due agreed to extend the time of payment for a definite period, and did so, upon the promise of the maker that, if the assignee would so forbear, he would pay the note at the expiration of such

period. Upon these facts the court there held that such promise of the maker constituted a new contract, binding in law, and capable of enforcement, though the maker had a good defence to the note before its assignment. The case cited is quoted, with express approval of its decision of the question we are now considering, in the later case of *Henry* v. *Gilliland*, 103 Ind. 177. See, also, *Doherty* v. *Bell*, 55 Ind. 205. Upon the facts found by the trial court, there is no error in any of its conclusions of law which is available to appellant for the reversal of the judgment.

It is claimed on behalf of appellant that the court erred in overruling his demurrer to the complaint herein. The only objection urged to the complaint is, that in the copies of the notes filed therewith there is a blank space, immediately preceding the words " promise to pay," etc., which was apparently intended to be filled by the pronoun " I " or " we," but was not so filled. There is no substance, we think, in this objection to the complaint. The blank space referred to clearly indicated the purpose for which it was left blank, and how and with what word it was intended it should be filled. In such case it was competent for the payee or any endorsee of the notes to fill such blank spaces with the proper pronoun, without impairing in any manner, or to any extent, the validity or binding force of such notes as contracts. *Marshall* v. *Drescher*, 68 Ind. 359.

The demurrers to each paragraph of complaint were correctly overruled.

Finally, errors are assigned here by appellant upon the overruling of his demurrers to each paragraph of appellee's reply to his answers herein. In his answers appellant pleaded specially that the notes were obtained from him by the fraud of the payee, and were executed without any consideration whatever therefor. To these special defences appellee replied, substantially, that after the notes in suit were assigned to it, and before the note first maturing became due, appellant requested of appellee an extension of the time of payment of

such note first maturing, for a period of three weeks, and promised and agreed with appellee to pay both of such notes at the expiration of the time of such extension, if such extension should be granted, etc.; and that, in consideration of the promise and agreement so made by appellant, appellee agreed to, and did, extend the time of payment of such note first maturing, for such period of three weeks, etc.

The only objections to such paragraphs of reply, urged on behalf of appellant, are that the matters therein stated are departures from the causes of action pleaded by appellee in its complaint herein. These objections to the paragraphs of reply, we think, are not well taken, and can not be sustained.

In section 357, R. S. 1881, it is provided that when any paragraph of answer contains new matter, the plaintiff may, "in separate paragraphs, reply any new matter which supports the complaint and avoids the new matter in such paragraph of the answer."

In the case in hand it is apparent, from our summary of the paragraphs of reply objected to, that the "new matter" therein supports the causes of action stated in the complaint, and avoids the new matter in appellant's paragraphs of answer. Under our civil code, the paragraphs of reply were properly pleaded, and were not objectionable on the ground of departure, and appellant's demurrers thereto were correctly overruled. *Doherty* v. *Bell, supra.*

We have found no error in the record of this cause which authorizes or requires the reversal of the judgment.

The judgment is affirmed, with costs.

Filed Oct. 10, 1888.