Jaseph *v.* Kronenberger *et al.*

Filed Oct. 30, 1889.

120 495
132 47

No. 13,815.

JASEPH *v.* KRONÉNBERGER ET AL.

JUDGMENT.—*Action to Recover.*— *When Maintainable.*—*Promissory Note.*—**An** action to recover a judgment *in personam* can not be maintained on a note till its maturity.

FRAUDULENT CONVEYANCE.—*Promissory Note.*—*Subjection of Property to Payment of.*— *When Action May be Maintained.*—Where the holders of a promissory note seek to subject to its payment lands and other property of the maker alleged to have been fraudulently conveyed, the action can not be maintained until the note becomes due.

SAME.—*Garnishment Proceeding.*—*Conveyance of Property to Defraud Creditors.* —*Valuable Consideration.*—*Collusion Between Parties.*—Where a person colludes with a debtor to defraud creditors, taking a conveyance of property for that purpose, but giving a valuable consideration therefor, and there is no money placed in the grantee's hands or under his control belonging to the debtor, and nothing owing from him to the debtor, a garnishment proceeding against the grantee can not be maintained.

EVIDENCE.—*Weight of.*—*Supreme Court.*—*Entire Absence of Proof.*—The Supreme Court will not examine the evidence in the record to determine the weight of evidence; but will, on the other hand, do so to ascertain whether there is an entire absence of proof as to all or any of the facts necessary to be established to entitle the plaintiff to judgment.

From the Vanderburgh Circuit Court.

*A. Gilchrist* and *C. A. DeBruler*, for appellant.
*J. M. Shackelford* and *S. B. Vance*, for appellees.

BERKSHIRE, J.—The appellees Kronenberger and Barnett

were plaintiffs in the court below, the appellant and the appellees Fares and Fitzgerald were the defendants.

The original or first paragraph of the complaint was filed, and the action commenced, on the 26th day of February, 1885. On the 9th day of May following, a second paragraph of complaint was filed, and on the 26th day of October, 1886, a third paragraph was filed.

The first paragraph is not in the record, nor is it necessary that it should be, for it was upon the second and third paragraphs that issues were joined and the case tried.

The following is an abstract of the third paragraph of the complaint as we find it in the brief filed by counsel for the appellees Kronenberger and Barnett:

" 1. That the defendants, Larkin Fitzgerald and John C. Fares, by their promissory notes, dated the 19th day of April, 1884, agreed to pay plaintiffs, twelve months therefrom, the sum of three hundred and forty dollars, with interest thereon at eight per cent. per annum from date until paid, with five per cent. attorney's fees; a copy thereof is filed with the first paragraph and is referred to and made part thereof. No part of said note has been paid.

" 2. John C. Fares is only the surety of defendant Larkin Fitzgerald, in the said notes.

." 3. That on the 1st day of July, 1884, the defendant Larkin Fitzgerald made a mortgage to defendant Fares, on sundry articles of personal property therein mentioned, consisting of mules, horses, farming implements and harness, and a crop of corn growing on two hundred and thirty-five acres of land in the county of Henderson and State of Kentucky, subject to a lien for rent, to secure said Fares in the payment of a note of even date therewith, for fifteen hundred dollars, due nine months after date, with interest at seven per cent.; and also to secure said Fares from any loss by reason of any further advancements that might be made, or any endorsements by said Fares for said Fitzgerald.

" 4. The said mortgage was made and acknowledged in

Vanderburgh county, Indiana, but at its date, Fitzgerald resided in the county of Henderson, and State of Kentucky, and the whole of the property embraced in said mortgage was situated therein, and the mortgage was there duly recorded according to the law of that State.

" 5. On the 9th day of December, 1884, the defendant, John C. Fares, made a mortgage of all the property owned by him to John Kistner and others, to secure sundry debts other than that of plaintiffs', which mortgage was duly acknowledged and recorded ; the said debts exceeded in amount the value of said property, and the whole thereof has been exhausted in their payment. The said Fares is wholly insolvent and has no property out of which plaintiffs' said debt or any part thereof can be made.

" 6. On the 10th day of December, 1884, the said John C. Fares, by deed of that date, conveyed to the defendant Simeon Jaseph, all of his property, being the same embraced in his said mortgage, above mentioned, in trust for the payment of his debts. The said trust was accepted by the said Jaseph on the 11th day of December, 1884, and said deed and acceptance were duly recorded.

" 7. The defendant, Fitzgerald, owned no property but that embraced in the said mortgage, made by him to defendant Fares, and has not, since that date, owned any other property.

" 8. The said mortgage was made, and was intended, to secure the said Fares in any liability he might have incurred, or might incur, as surety for said Fitzgerald, including the note of plaintiffs herein mentioned. And plaintiffs say they are entitled to be substituted to the rights of said Fares in said mortgage, and to have the same foreclosed for their benefit.

" 9. After the execution and acceptance of said deed of trust from John C. Fares to the defendant Jaseph, and while suit was pending, in favor of the plaintiffs against said Fitz-

gerald, in the Henderson Circuit Court, in the State of Kentucky, for the foreclosure of said mortgage, and to subject said mortgage property to the payment of their said debt, the defendant, Jaseph, took possession of said property and wrongfully removed it from the State of Kentucky, and now has the same in his possession in this county, or has wrongfully sold and converted the same to his own use. Said property was worth six thousand dollars.

"11. Plaintiffs pray judgment for their said debt, and that defendant Jaseph be required to account for the value of said property, and that so much thereof as may be necessary be applied to pay the judgment herein."

It is not necessary to set out an abstract of the second paragraph, as it does not differ materially from the third.

On the 12th day of January, 1886, affidavits in attachment and garnishment were filed. Among other things it was alleged in the affidavit in attachment that " the defendant Larkin Fitzgerald had sold, conveyed, or otherwise disposed of his property subject to execution, with the fraudulent intent to cheat, hinder, and delay his creditors," and in the affidavit in garnishment, among other things, it is stated " that he (the affiant) has good reason to believe that Simeon Jaseph is indebted to the defendant Larkin Fitzgerald, and has the control or agency of certain money of the said Larkin Fitzgerald which the sheriff can not attach by virtue of the writ issued herein."

The appellant answered the main action in two paragraphs: 1. The general denial. 2. That the appellant bought the note and mortgage which had been executed by Fitzgerald, and from him the whole of the property described in the mortgage, and paid him therefor one thousand dollars in addition to said note of fifteen hundred dollars, which was secured by said mortgage, and which was the full value of said property ; that before his said purchase he was assured by Fares and Fitzgerald that Fares had made no endorsements

for Fitzgerald, nor any advancements to him, and so had no interest in the mortgage.

The following is the answer to the affidavit in garnishment :

" For answer to the garnishment in this action, the defendant Simeon Jaseph denies that he is indebted to the defendant Larkin Fitzgerald in any sum whatever, or was so indebted at the date of the filing of the affidavit of garnishment in this case, or at any time since said date. And said Simeon Jaseph further says that he had not, at the time said affidavit of garnishment was filed, the control or agency of any money of said Larkin Fitzgerald."

The other defendants were defaulted. Issue having been joined in the main action, and also in the proceedings in garnishment as between the plaintiffs and the appellant, the cause was submitted to the court for trial, with a request made at the proper time for a special finding. Afterwards the court returned its special finding, and to the conclusions of law as stated therein the appellant excepted.

The appellant then filed a motion for a new trial, which the court overruled, and he excepted. He then moved the court to arrest the judgment, which was overruled, and an exception reserved, and thereupon the court rendered judgment *in personam* against the appellant for the amount found due upon the note sued upon.

The assignment of error contains four specifications :

1. The court erred in its conclusions of law.

2. The court erred in overruling the motion for a new trial.

3. The court erred in overruling the motion in arrest of judgment.

4. The court erred in rendering judgment against the appellant and for the appellees Kronenberger and Barnett.

The fourth specification is covered by the first and second. How far a motion in arrest of judgment reaches the record, and whether or not the affidavits in attachment and garnish-

ment will be considered by the court in aid of the complaint as against a motion in arrest of judgment, we do not feel called upon to determine at this time.

This leaves for our consideration the first and second specifications, which we may consider together.

This was an action upon a promissory note not due when the action was commenced. Until due no action to recover a judgment *in personam* could be maintained upon the note. The case of *De Haven* v. *Covalt*, 83 Ind. 344, cited by appellees' counsel, is not to the contrary of our conclusion. The learned commissioner delivering the opinion of the court in that case states expressly that the judgment complained of was erroneous; the error was held to be unavailable in the case he was considering, for the reason that the judgment could not be attacked collaterally, because it was not void. The following cases fully sustain our conclusion: *Collins* v. *Nelson*, 81 Ind. 75; *Evans* v. *Thornburg*, 77 Ind. 106. But had the note fallen due before suit, the appellant was not liable thereon. It is nowhere averred that he ever assumed or bound himself to pay the debt evidenced by the note.

If the appellant practiced a fraud, Kronenberger and Barnett could not maintain an action against him until their debt matured, for until then they could not know that the note would not be paid according to its terms, and, therefore, could not claim that they were damaged by the fraud perpetrated. See the two authorities cited above.

One of the reasons assigned for a new trial is, that the finding is not sustained by sufficient evidence.

The proviso to section 913, R. S. 1881, reads thus: " That the plaintiff shall be entitled to an attachment for the causes mentioned in the second, fourth, fifth, and sixth specifications of this section, whether his cause of action be due or not."

The ground alleged in the affidavit in attachment is covered by the fifth specification. Notwithstanding the length of the complaint and the many averments therein, when we come to consider it in connection with the proceedings in

attachment, we can only regard it as an ordinary action upon a note. And we must regard it in that connection, for, as we have seen, it discloses no cause of action independent of the attachment proceedings. It is a well settled rule of this court that it will not look into the evidence contained in the record with a view of determining the weight of evidence as between the parties; it is also a rule equally well settled that the court will look to the evidence for the purpose of ascertaining whether there is an entire absence of proof as to all or any of the facts necessary to be established to entitle the plaintiff to a judgment. If, at the time of the commencement of the proceedings in attachment, including the garnishment proceedings, the appellant had no money in his hands or under his control belonging to Fitzgerald, and was not indebted to him in any sum, it follows from what we have said that the appellees Kronenberger and Barnett were not entitled to a recovery against him. The evidence not only fails to show that the appellant had money in his hands or under his control belonging to Fitzgerald, but goes further and discloses affirmatively that such was not the case; and in this particular the special finding of facts as made by the court and the evidence agree.

The facts as found by the court are to the effect that Fitzgerald and the appellant conspired together and perpetrated a fraud, and that it was hurtful to the creditors, and there is evidence tending to support the finding; but the appellant did not thereby become indebted to Fitzgerald, nor was there any money placed in his hands or under his control belonging to Fitzgerald.

The transaction as disclosed was valid and binding between the parties, and independent of any rule of law which would intervene and prevent Fitzgerald from holding the appellant to an account, the facts disclosed show that he was under no moral obligation to pay to or turn over to Fitzgerald any money. As appears from the evidence, Fitzgerald sold the

mortgaged property to the appellant, and he paid therefor all that he agreed.

Whether the circumstances as proven are such that in a proper action, brought at a proper time, equity would treat the appellant as a trustee for the benefit of the creditors of Fitzgerald, is a question not presented by the record in this case.

This is an action wherein the parties must stand upon their legal and not their equitable rights.

Judgment reversed, with costs, with instructions to grant a new trial.

Filed Oct. 19, 1889; petition for a rehearing overruled Dec. 14, 1889.