Paul Eugene SMITH, Eileen Smith and S. Paul Smith, (deceased), Appellants (Defendants Below),

v.

UNION STATE BANK, Appellee (Plaintiff Below).

No. 2–382A267.

Court of Appeals of Indiana, Second District.

Aug. 30, 1983.

Craig R. Benson, Thomas A. Berry, Barbara B. Benson, Bloomington, for appellants.

Michael O. Bolinger, Kokomo, for appellee.

SHIELDS, Judge.

■ Paul Eugene Smith, Eileen Smith and S. Paul Smith (deceased) (Smiths) appeal the trial court's judgment for $356,-171.34, interest and attorney fees in a foreclosure action brought by the Union State Bank (Bank). The Smiths allege several errors in the trial court's determination of their liability on nine promissory notes executed between 1968 and 1981 to finance their farming operations. The issues[1] on appeal as restated by this court are:

 I. whether a cause of action for default on two participation notes had accrued at the time of suit?

 II. whether two participation notes were secured by the mortgage on Smith's farm?

 III. whether Bank possessed a good faith belief that its loans were insecure at the time Bank's complaint was filed?

 IV. whether the trial court erred in awarding $25,000 in attorney fees?

We affirm in part and reverse and remand in part.

---

1. The Smiths also argue the trial court's judgment inequitably deprived them of the opportunity to present evidence on their counterclaim for tortious interference with the sale of a parcel of land. This issue was not adequately raised in their motion to correct errors, and is therefore waived. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7). Similarly, the Smiths have failed to present cogent argument in their characterization of the trial court's judgment as improperly extending to foreclosure on personal property. *Id.* Our review of the judgment reveals reference only to foreclosure on real estate secured by the Mortgage.

## FACTS

On April 4, 1968, the Smiths executed a mortgage (Mortgage) on their 260 acre family farm and a contemporaneous promissory note for $41,230.89 (Mortgage Note) in favor of Bank. Over the next thirteen years, the Smiths executed between 300 and 370 promissory notes representing both new loans and renewals. At least three promissory notes (PCA Notes) represented participation funds received by Bank from Eastern Production Credit Association (PCA), a secondary lending cooperative for farmers. In 1979 and 1980 the Smiths began to experience financial difficulties. They consulted a financial advisor and eventually sold a 167 acre parcel[2] to satisfy other debts. None of the proceeds were remitted to Bank. When Bank filed its complaint on February 18, 1981, six short-term promissory notes (Promissory Notes), two PCA notes, and the Mortgage Note were outstanding:

| Note Number | Principal Amount | Due Date |
|---|---|---|
| 41760 | 22,500.00 | 04/22/81 |
| 41868 | 28,572.62 | 05/08/81 |
| 42320 | 57,707.08 | 03/24/81 |
| 42436 | 46,459.70 | 04/14/81 |
| 42711 | 88,725.01 | 03/03/81 |
| 42721 | 5,053.61 | 03/03/81 |
| PCA Note 1 | 27,240.00 | 01/25/77 |
| PCA Note 2 | 21,744.00 | 11/06/76 |
| Mortgage Note | 5,230.89 [3] | |

The trial court found these notes were in default, unpaid, and secured by the mortgage. On April 15, 1982 judgment was entered for $303,232.91 principal, $52,938.43 interest and $25,000 attorney fees.

## I.

 The trial court issued findings of fact and conclusions of law. In reviewing the findings, an appellate court neither weighs the evidence nor determines the credibility of witnesses. If the record discloses either facts or reasonable inferences to support the court's findings, the findings

2. In 1975, Bank released the mortgage on 120 acres. The Smiths purchased an additional 70 acres and mortgaged the total 190 acres to Equitable Life Insurance Company (Equitable). Bank had not retained any interest in this acreage. Equitable, however, foreclosed on this parcel sometime before Bank filed suit.

are not clearly erroneous and will not be disturbed on appeal. *Greenfield Builders & Erectors, Inc. v. Fellure,* (1982) Ind.App., 443 N.E.2d 87.

 Smiths argue the trial court erred in finding the notes were due and unpaid on February 18, 1981, the date the complaint was filed, and therefore Bank's suit was premature. The parties agree the six Promissory Notes and the Mortgage Note had not matured. However, it is similarly conceded the two PCA Notes were due and payable on November 6, 1976 and January 25, 1977 respectively, over three years before the date of suit. A cause of action against the maker of a note accrues under I.C. 26–1–3–122 (Burns Code Ed., 1974) on the day after maturity; *accord Jaseph v. Kroneberger,* (1889) 120 Ind. 495, 22 N.E. 301; no demand is necessary where the time for payment is fixed in the note. *Foust v. Hannah,* (1848) 1 Ind. 273. The suit on the PCA Notes was timely.

 With regard to the PCA Notes, the Smiths first intimate the PCA Notes were not "real" but were "toy notes" not intended for enforcement. The PCA Notes, however, were identical to the other promissory notes sued upon; they were executed in the same manner. A promissory note is a written promise by one person to pay another person, absolutely and unconditionally, a certain sum of money at a specific time. *Brown v. First National Bank of Indianapolis,* (1888) 115 Ind. 572, 18 N.E. 56; *accord* I.C. 26–1–3–104(1) (Burns Code Ed. 1974). A promissory note, although secured by a real estate mortgage, is a negotiable instrument enforceable under I.C. 26–1–3–101 through 805 (Burns Code Ed.1974). *First Valley Bank v. First Savings & Loan Association of Central Indiana,* (1980) Ind. App., 412 N.E.2d 1237. Both PCA Notes are dated and recite: "180 days after date,

3. This figure represents the amount outstanding at the time of suit rather than the principal amount. The parties agree the Mortgage Note was not yet overdue.

we or either of us, jointly and severally promise to pay to the order of Union State Bank, Windfall, Indiana [$27,240.00 and $21,744.00 respectively]...." Both are signed by the Smiths. The PCA Notes are enforceable negotiable promissory notes.

■ Smiths urge, however, their default on the PCA Notes should be excused in equity due to Bank's handling of the PCA Notes. When Bank reached its loan limit, PCA advanced funds to Bank, who deposited the funds in the Smiths' account. The Smiths executed a promissory note to Bank for the amount of PCA funds, and purchased "shares" in PCA. The Smiths did not negotiate the transactions with PCA but typically dealt directly with Bank according to the terms of the promissory note and usual banking procedures. Only Bank was directly responsible to PCA according to a Participation Agreement which delineated the rights and obligations between Bank and PCA. That agreement provided: "Payments and proceeds derived from each total loan, from any source, shall be applied pro rata, according to the respective interest of Bank and Association at the time of payment." The testimony discloses both Bank's and PCA's confusion regarding the operation of this provision. The Smiths allege Bank failed to make the required pro rata payments on the PCA debt from the Smiths' payments to Bank. They conclude Bank's failure to follow established procedure misled them. *See Moore v. Sargent,* (1887) 112 Ind. 484, 14 N.E. 466 (dictum).

To the contrary, the evidence supporting the court's findings establishes the Smiths' knowledge of and acquiesence in their default on the PCA Notes. For example, the Smiths made payments directly to PCA on March 12, 1976 and August 1, 1977. It is uncontested Smith executed the PCA Notes which recite their due dates. Sometime after the Smiths' last direct payment to PCA, a joint meeting between Smith, PCA and Bank was held to discuss alternative methods of satisfying the delinquency on the PCA Notes. We also note the failure of the Smiths to allege the PCA Notes would not have defaulted even upon pro rata ap-

plication of their loan payments; the total amount paid by the Smiths during the relevant period is unknown. In any event, we must conclude the Smiths were aware of their debt to PCA and knew Bank failed to reduce the debt pro rata.

## II.

■ The Smiths argue the handling of PCA Notes outside Bank's usual bookkeeping system indicates the mortgage was not intended to secure the PCA Notes. However, the mortgage contains a "dragnet" clause securing all future loans:

"*This mortgage* is given to the mortgagee for the purporse (sic) of securing all indebtedness already owing by said mortgagors to said Union State Bank, in the sum of $41,230.89 and *is also given to secure all indebtedness or liability, of every kind, character and description* of the mortgagors, or either of them, to the mortgagee *hereafter created,* such as future loans, advances, overdrafts, and all indebtedness that may accrue to said Bank by reason of the mortgagors, or either of them, becoming surety or indorser for any other person, whether said indebtedness was originally payable to said Bank or has come to it by assignment or otherwise, and shall be binding upon the mortgagors and remain in full force and effect until all of said indebtedness is paid. This mortgage shall secure the full amount of said indebtedness without regard to the time when same was made." (Emphasis added).

Indiana recognizes the validity of dragnet clauses in real estate mortgages to secure otherwise unspecified future advances. Under a similar clause our supreme court held "if [notes] were given for advances made after the execution of the mortgage, and on the faith thereof, they are secured by it, but, if given for or in renewal of indebtedness not secured by the mortgage, they are not secured by it." *Bowen v. Ratcliff,* (1895) 140 Ind. 393, 398, 39 N.E. 860, 862. The intent of the parties to the contract controls the operation of a dragnet clause. *Id.; Hancock Co. Bank v. American*

*Fletcher National Bank & Trust Co.,* (1971) 150 Ind.App. 513, 276 N.E.2d 580.

 Although Bank's contractual relationship with PCA warranted separate treatment of the PCA Notes internally, Bank was still the primary lender. The PCA Notes were part of the Smiths' total indebtedness to Bank. These promissory notes were identical to the other notes executed between the parties to finance the Smiths' farming operations. After the parties executed the Mortgage and Mortgage Note in 1968, they embarked on a pattern of revolving loans, of which the PCA Notes were a part, to provide the Smiths with the cash flow necessary to run their farm. This evidence was sufficient to support the trial court's conclusion the Mortgage was intended to secure all promissory notes executed between the parties, including the PCA Notes.

### III.

 Smiths argue the six Promissory Notes and the Mortgage Note were not in default at the time the complaint was filed. To the contrary, the Mortgage Note and four of the Promissory Notes provide for acceleration of payment upon insecurity under the following clause: "If the holder deems himself insecure, then, at his option, he may declare this note to be immediately due and payable." Acceleration provisions are valid and enforceable in Indiana. *Streets v. M.G.I.C. Mortgage Corp.,* (1978) 177 Ind.App. 184, 378 N.E.2d 915. Although the original due date had not accrued, Bank was entitled to demand accelerated payment if Bank believed, in good faith, the prospect of payment was impaired. I.C. 26–1–1–208 (Burns Code Ed. 1974).

 In this regard, Smiths first claim lack of notice insecurity would be in issue at trial since Bank was not, in fact, insecure, according to the Smiths. It is unnecessary to determine insecurity in fact.

A creditor may accelerate payment under an insecurity clause upon a "good faith *belief*" the prospect of payment is impaired. I.C. 26–1–1–208 (Emphasis added). Assuming, *arguendo,* Bank was not insecure, even an erroneous determination of insecurity was not necessarily unreasonable or in bad faith. *Sheppard Federal Credit Union v. Palmer,* (5th Cir.1969), 408 F.2d 1369. Moreover, the Promissory Notes uniformly waive notice or demand: "The makers and endorsers severally waive presentment, demand, protest, notice of dishonor or nonpayment and consent to extensions of time." Notice of acceleration is provided by the institution of suit for the whole debt or by foreclosure proceedings. *Buchanan v. Berkshire Life Insurance Co.,* (1884) 96 Ind. 510; 11 Am.Jur.2d *Bills & Notes,* § 296 (1963). Insecurity was properly at issue.

 The Smiths also challenge the Bank's determination of insecurity. The trial court concluded Bank "had the reasonable belief that it was insecure." A good faith belief under I.C. 26–1–1–208 (Burns Code Ed.) means at least "honesty in fact in the conduct or transaction concerned." I.C. 26–1–1–201(19) (Burns Code Ed.1974). In addition, the determination of insecurity must have been objectively reasonable under the circumstances. *Universal C.I.T. Credit Corp. v. Shepler,* (1975) 164 Ind.App. 516, 329 N.E.2d 620.

 Significantly, the Smiths bore the burden of establishing the *lack* of good faith.[4] I.C. 26–1–1–208. The evidence revealed an increasing loan debt to Bank over the past twelve years. On numerous recent occasions, Bank had refused to extend the Smiths additional credit and aided them in the search for loans elsewhere, although they were repeatedly refused. Many promissory notes were simply rolled over into renewal notes when due. Bank knew Equitable had foreclosed on another tract of the Smiths' land. Bank was also aware of the Smith's financial condition through conver-

---

4. Since the Smiths bore the burden of proof on this issue, they are appealing from a negative judgment. They must therefore establish the evidence is without conflict and leads to only

one conclusion not reached by the trial court. *Spurlock v. Fayette Federal Savings & Loan Association,* (1982) Ind.App., 436 N.E.2d 811.

sations with the Smiths' financial advisor. At trial, Smith admitted his financial difficulties and his inability to pay his general creditors. At the time the complaint was filed, the sale of Equitable's parcel was pending. Although there is a modicum of conflicting evidence, the determination of insecurity is a question of fact. *Universal C.I.T. Credit Corp.,* 329 N.E.2d at 623. We will not disturb the trial court's finding that Bank had a reasonable belief its loans were insecure on the date the complaint was filed.

We must agree, however, with the Smiths contention that two of the Promissory Notes were improperly accelerated. Notes 41760 and 41868, in the principal amounts of $22,500.00 and $28,572.62 respectively, do not contain the same acceleration or insecurity language. These notes were separately secured by certificates of deposit and provide for sale or transfer of the CD's upon maturity of the note "or before in the event of the said security depreciating in value, . . . ." The parties point to no evidence in the record that the CD's "depreciated." We must also reject Bank's contention that these two notes were accelerated by the "dragnet clause" discussed above. Such a clause may secure all notes, but it does not provide for acceleration. The dragnet and acceleration clauses are separate and distinct. Neither the Mortgage nor the two notes contains an acceleration provision. Since the notes did not otherwise mature until April 22, 1981 and May 8, 1981 respectively, suit brought on February 18, 1981 was premature. *Jaseph v. Kronenberger,* (1889) 120 Ind. 495, 22 N.E. 301. The trial court's judgment on these two notes must be reversed.

### IV.

We must also reverse the trial court's award to Bank of $25,000.00 for attorney and accountant fees. The Promissory Notes, PCA Notes, Mortgage Note and Mortgage provide for payment of attorneys fees. There is no evidence in the record, however, demonstrating a reasonable amount for the services rendered in the case at bar. The trial court found: "That the Court has considered the time schedule submitted by counsel for [Bank] and the time schedule of Michael Lesher, [Bank's] accountant." Although the exhibits were offered, they were not admitted into evidence, nor was any testimony received upon the reasonableness of the award. Specifically, there is no evidence regarding the factors enumerated in the Code of Professional Responsibility DR 2–106, including the time and labor required or the fee customarily charged in the community for similar services. Judicial notice of a reasonable attorney fee may be appropriate in routine cases or in those involving small awards. *E.g., Fox v. Galvin,* (1978) 177 Ind.App. 654, 381 N.E.2d 103. In contrast, the instant case involved, for example, extensive review of bank records and an accountant's services, and resulted in an award for a large sum. *See Berkemeier v. Rushville National Bank,* (1982) Ind.App., 438 N.E.2d 1054 (reversing $17,500.00 award in foreclosure action on notes totaling $233,548.93 in absence of any evidence regarding fees.) In addition, we recognize the likelihood that the $25,000.00 improperly includes fees for the premature suit on the two Promissory Notes. We therefore reverse the award of $25,000.00 in fees and remand for a hearing on this issue.

Affirmed in part, reversed in part and remanded.

BUCHANAN, C.J., concurs.

SULLIVAN, J., concurs.