William B. HEPBURN and Lois M. Wilbur Hepburn, Appellants–Defendants,

v.

TRI–COUNTY BANK, Appellee–Plaintiff.

No. 54A01–0507–CV–327.

Court of Appeals of Indiana.

Feb. 13, 2006.

Rehearing Denied May 16, 2006.

David A. Rosenthal, Lafayette, for Appellants.

Gregory H. Miller, Crawfordsville, for Appellee.

## OPINION

MAY, Judge.

Lois M. Wilbur Hepburn and William Hepburn appeal the trial court's grant of summary judgment to Tri–County Bank. They raise one issue on appeal, which we restate as whether the guaranty Lois signed in 2002, which indicated it was "unsecured," was nevertheless secured by mortgages she had signed in 1998, 1999, and 2002 because those earlier executed mortgages included dragnet clauses.[1] We affirm.

---

1. In their reply brief, the Hepburns assert the trial court erred in granting summary judgment to Tri–County Bank because "[n]either the Complaint nor the Motion for Summary Judgment claimed that each mortgage secured the guaranty pursuant to a dragnet provision contained in such mortgage," (Reply Br. at 3), and therefore, they "had no notice to respond to such claim first made at the hearing on Summary Judgment." ' (*Id.*)

Appellants are not permitted to present new arguments in their reply briefs, and any argument an appellant fails to raise in his initial brief is waived for appeal. *See Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 593 n. 6 (Ind.2001); *see also* Ind.App. R. 46(C) ("No new issues shall be raised in the reply brief."). Because the Hepburns did not raise this procedural argument in their initial brief to this court, it is waived for appeal.

Notwithstanding the waiver, our review of the record indicates the Bank *did* raise the issue in its motion for summary judgment:

14. That Lois and William have failed to pay on Account Nos. 90605, 96389, 96116, and 96552 owed to Tri–County, all of which accounts are secured by Lois' guarantee and, therefore, are further secured by said above-referenced mortgages against the Mortgaged Property, and, therefore, by reason of her and William's default on said other accounts owed to Tri–County, Lois is in default under said above-referenced promissory notes and mortgages.

(App. at 72.) Moreover, on April 8, 2005, the Hepburns filed a summary judgment brief

## FACTS AND PROCEDURAL HISTORY [2]

Lois and William are married. Lois is the sole owner of farmland in Montgomery County. William owns a window business.

On November 6, 1998, Lois executed with Tri–County Bank Note No. 90276 to borrow $40,000.00. (App. at 14.)[3] That same day she assigned to Tri–County a security interest in any cash rent proceeds from the rental of her farm and executed a mortgage that secured Note No. 90276 with her farmland. The mortgage contains the following language:

2. **Renewal and Other Indebtedness.** This mortgage also secures any and all renewals, extensions, modifications, substitutions, and replacements of the Note or any part thereof. This mortgage also secures the payment to Mortgagee of any future obligations and advances to Mortgagor to the same extent as if such future obligations and advances were made on the date of. execution of this Mortgage (it being understood that Mortgagee is not under any obligation to make any future advances except as specifically set forth in the Note). All such future obligations and advances payable herein shall be without relief from valuation or appraisement laws, and with attorney's fees and other costs of collection incurred by Mortgagee.

(*Id.* at 17.)

On January 14, 1999, Lois and William executed Note No. 90605, by which Tri–County loaned $116,750.00 to them. Under "ADDITIONAL TERMS" the Note provides: "2nd mortgage on real estate dated 1/14/99, in the amount of $116750.00 in Montgomery County, Indiana, and equipment owned and hereafter acquired under security agreement dated 11/07/97."[4] (*Id.* at 29) (capitalization removed). That same day Lois executed a second mortgage on her farm, which mortgage contained the same clause regarding "Renewal and Other Indebtedness" as did the first mortgage quoted above. (*Id.* at 32) (emphasis removed).

On August 8, 2002, William executed Note No. 96552 for $80,000.00. (*Id.* at 42.) In the "ADDITIONAL TERMS" that Note indicates: "Security agreement of equipment, account [sic] receivable, inventory, deposit accounts, and an assignment of insurance policy on William B. Hepburn, and mortage [sic] dated 8/8/2002, and guaranty by Lois Hepburn dated 8/8/2002." (*Id.*) The same day, Lois executed the third mortgage on her farm, and the mortgage contained the same "Renewal and Other Indebtedness" clause in the other two mortgages. In addition, Tri–County prepared a guaranty, which Lois executed.

The guaranty provides:

I absolutely and unconditionally guarantee to you the payment and performance

addressing one issue: "whether Plaintiff's mortgages secure Defendants['] debt pursuant to a Guaranty." (*Id.* at 88–91.) Accordingly, the Hepburns did have an opportunity "to respond to such claim." (Reply Br. at 3.)

2. The Hepburns failed to include in their brief a copy of the order being appealed. *See* Ind. Appellate Rule 46(A)(10) ("The brief shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."). They also failed to consecutively number the pages of their appendix, as required by App. R. 51(C). Their failure to follow those rules hindered our review, and we urge counsel to review the appellate rules.

3. We sequentially numbered the pages in the Appellant's Appendix and identify the pages by our numbers.

4. The Appendix does not appear to contain the security agreement for equipment allegedly executed in 1997.

of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you, up to the principal amount of $400,000.00 plus accrued interest, attorneys' fees and collection costs referable thereto (when permitted by law), and all other amounts agreed to be paid under all agreements evidencing the debt and securing the payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

(*Id.* at 23.) The guaranty included a section where the bank could indicate whether the guaranty was "secured" or "unsecured," and the Bank marked the box for "unsecured." (*Id.*)

On February 24, 2003, William executed another Note with Tri–County Bank. This Note indicates it is a renewal of Loan No. "96389" for $12,301.00, and it indicates it is "separately secured by ... security agreement dated 7/5/2002 for accounts receivable." (*Id.* at 56.) That same day, William also executed a Note for Loan No. 96116 for $168,061.00. This Note indicates it is secured by: "assignment of [illegible] rights to accounts receivable from William H. Block's building renovation under security agreement dated 5/9/02 and guaranty dated 5/9/02 by Lois Hepburn." (*Id.* at 60.)

On October 14, 2004, Tri–County Bank filed a complaint against the Hepburns, alleging William had defaulted on his Notes and requesting foreclosure on the mortgages. The Hepburns "admitted to all allegations except the amount of the debt and demand the guaranty was secured by existing mortgages." (Appellant's Br. at 2.)

Tri–County filed a motion for summary judgment and designated evidence in support of that motion. Included therein was an affidavit from a Vice President of Tri–County Bank, which stated:

Rodger A. Winger, affirms and states as follows:

1. That he is the Vice President of Tri–County Bank & Trust Company.

2. That he has access and control of all records concerning the promissory notes, mortgages, commercial security agreements, and guaranty executed by the Defendants, William B. Hepburn and Lois M. Wilbur Hepburn.

4.[sic] That the amounts owed to Tri–County Bank & Trust Company by the Defendants are as follows:

a. Account # 90276: $20,083.49, plus *per diem* interest at the rate of $3.71407 from 9/22/04;

b. Account # 90605: $91,455.01, plus *per diem* interest at the rate of $14.24426 from 9/22/04;

c. Account # 96552: $78,251.90, plus *per diem* interest at the rate of $15.62172 from 9/22/04;

d. Account # 96389: $13,889.97, plus *per diem* interest at the rate of $2.81898 from 9/22/04;

e. Account # 96116: $176,564.18, plus *per diem* interest at the rate of $37.30960 from 9/22/04, for a total indebtedness owed to Tri–County in the amount of $383,244.55, plus *per diem* interest at the rate of $73.70863 from 9/22/04, plus attorney's fees and costs.

(App. at 79.)

The Hepburns' response to Tri–County's motion for summary judgment acknowledged "that no issues of material fact exist and judgment may be entered," but claimed that judgment should not be entered "as pled by Plaintiff." (*Id.* at 81.) Rather, the Hepburns' asserted:

Lois M. Wilbur Hepburn owned certain real estate, the subject of the Mortgages dated 1/14/99 securing an unpaid

debt set forth in paragraph 16a; 2/18/02 secured an unpaid balance set forth in the Motion for summary Judgment paragraph 16b; 8/8/02 securing an unpaid balance set forth in paragraph 16c. The two remaining notes were signed by William B. Hepburn for which Lois M. Wilbur Hepburn signed a guaranty of up to $400,000.00. Therefore, the Judgment should be entered as follows:

1. Judgment against William B. Hepburn in the amount as prayed.

2. Judgment against Lois M. Wilbur Hepburn in the amount as prayed.

3. The mortgage of 1/14/99 shall be foreclosed to secure the amount set forth in the Motion for Summary Judgment in paragraph 16a; the mortgage of 2/14/99 shall be foreclosed to secure the amount set forth in the Motion for Summary Judgment in paragraph 16b; the mortgage of 8/8/02 shall be foreclosed to secure the amount set forth in the Motion for Summary Judgment in paragraph 16c.

4. Security interest shall be foreclosed to pay for Notes under 16d and 16e.

5. Attorney fees shall be allowed in the amount of $1,750 per the Affidavit of Plaintiff's counsel.

(*Id.* at 81–82.)

After a hearing the court entered judgment for Tri–County, concluding "the mortgages executed in favor of Tri–County by Lois with regard to her real estate at Montgomery County ..., all of which mortgages secure the above-referenced judgments against Lois individually and William and Lois, jointly and severally, are hereby foreclosed, without any relief of appraisement." (*Id.* at 94.) In addition it ordered "Tri–County's mortgage liens against the Mortgaged Property are superior to all other liens, encumbrances, claims of interest asserted by William and Lois, or any other persons or entities ...." (*Id.* at 95.) The Hepburns filed a motion to correct error, which the trial court denied.

## DISCUSSION AND DECISION

"The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law." *Branham v. Celadon Trucking Services, Inc.,* 744 N.E.2d 514, 521 (Ind.Ct.App. 2001), *trans. denied* 753 N.E.2d 16 (Ind. 2001); *see also* Ind. Trial Rule 56(C). A factual dispute is material if it bears on the ultimate resolution of a relevant issue. *Bushong v. Williamson,* 790 N.E.2d 467, 474 (Ind.2003). "A factual issue is genuine if it is not capable of being conclusively foreclosed by reference to undisputed facts." *Id.*

We review the trial court's grant of summary judgment applying the same standard the trial court applied. *Branham,* 744 N.E.2d at 521. We must resolve any doubts about facts, or the inferences therefrom, in the light most favorable to the nonmoving party. *Id.* However, we may affirm the summary judgment on any theory supported by the evidence designated to the trial court. *Id.* Once the movant sets forth evidence to demonstrate no factual issues exist, the burden shifts to the nonmoving party to produce evidence demonstrating an issue of fact exists. *Id.* The nonmoving party may not simply rest on the pleadings; he must have designated facts to the trial court. *Id.*

The appellant has the burden to prove the trial court erred when it determined there were no issues of material fact and the appellee was entitled to judgment as a matter of law. *Ind. Farmers Mut. Ins. Group v. Blaskie,* 727 N.E.2d 13, 15 (Ind. Ct.App.2000). Although the non-movant

bears the burden of demonstrating the summary judgment was erroneous, we carefully review the trial court's decision to ensure that the non-movant was not wrongly denied his or her day in court. *Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 779 (Ind.2004), *reh'g denied.*

Interpretation of the language in a contract is a question of law especially suited for summary judgment proceedings. *Art Country Squire, L.L.C. v. Inland Mortgage. Corp.*, 745 N.E.2d 885, 889 (Ind. Ct.App.2001). We review questions of law *de novo*, and therefore we give no deference to the trial court's interpretation. *Id.* Our goal is to give effect to the intent of the parties as expressed within the four corners of the document. *Id.* We may not construe unambiguous language to give it anything other than its clear, obvious meaning, and we may not add provisions to a contract that were not placed there by the parties. *Id.* Rather, we determine the meaning of a contract from an examination of all of its provisions, without giving special emphasis to any word, phrase or paragraph. *Id.* We must read a contract as a whole and may not interpret individual sections in a manner that would cause them to conflict. *See Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind.Ct.App.2004) ("We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict."), *trans. denied* 831 N.E.2d 738 (Ind.2005).

The Bank and the Hepburns do not disagree about the material facts. The parties agree the court correctly foreclosed the three mortgages to secure payment of the three Notes that were executed contemporaneously with each of those mortgages. However, they do not agree the foreclosure of those mortgages may also be used to collect the amounts due on the other two loans to William that did not reference the mortgages.

The Bank claims Lois' three mortgages are attached to all five of the Notes because (1) Lois executed the guaranty, promising she would pay all of William's debts to the Bank, and (2) the three mortgages contain the following language:

2. **Renewal and Other Indebtedness.** This mortgage also secures any and all renewals, extensions, modifications, substitutions, and replacements of the Note or any part thereof. *This mortgage also secures the payment to Mortgagee of any future obligations and advances to Mortgagor to the same extent as if such future obligations and advances were made on the date of execution of this Mortgage* (it being understood that Mortgagee is not under any obligation to make any future advances except as specifically set forth in the Note). All such future obligations and advances payable herein shall be without relief from valuation or appraisement laws, and with attorney's fees and other costs of collection incurred by Mortgagee.

(App. at 17) (italics added). According to the Bank, because each mortgage "also secures the payment to Mortgagee of any future obligations," and because Lois's guaranty is a future obligation to the Bank, Lois's guaranty is secured by the mortgages on the farm. Thus, says the Bank, all of William's unpaid debts are secured by the mortgages on Lois's farm, and the Bank can collect the balance of all five Notes when it forecloses the three mortgages.

Lois claims the Bank waived any opportunity to assert the mortgages secured the guaranty because the guaranty included a section where the Bank could indicate whether the guaranty was "secured" or "unsecured" (*Id.* at 23), and the

Bank marked the box for "unsecured." (*Id.*) We decline to adopt Lois's reasoning.

A guaranty is "'a promise to answer for the debt, default, or miscarriage of another person.'" *S–Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580, 585 (Ind.Ct.App.2001) (quoting 38 Am. Jur. 2D *Guaranty* § 1 (1999)), *trans. denied* 761 N.E.2d 416 (Ind.2001). The guarantor is required to pay only if the principal debtor fails to pay. *Id.* We interpret a guaranty using the rules governing the construction and interpretation of contracts generally. *Id.* The terms of the guaranty determine the extent of a guarantor's liability and "should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within its terms." *Id.* at 585–86.

A guarantor's liability will not be extended by implication beyond the terms of his or her contract. A guarantor is a favorite in the law and is not bound beyond the strict terms of the engagement. Moreover, a guaranty of a particular debt does not extend to other indebtedness not within the manifest intention of the parties.

*Id.* at 586 (internal citations and quotations omitted).

The guaranty Lois signed indicates it is "unsecured." (App. at 23.) That indication is not false, as no security agreement or mortgage was directly attached to the guaranty. Standing alone, the guaranty is unsecured. The question is whether the dragnet clauses in the mortgages Lois signed secure the guaranty indirectly.

Dragnet clauses are valid in real estate mortgages in Indiana. *Smith v. Union State Bank*, 452 N.E.2d 1059, 1064 (Ind.Ct.App.1983). The placement of a dragnet clause in a mortgage creates "an open-ended mortgage." *Citizens Bank & Trust Co. of Washington v. Gibson,* 490 N.E.2d 728, 730 (Ind.1986).

"The guiding principle in the construction of a 'dragnet' clause in a mortgage is the determination of the intention of the parties. The question frequently resolves itself into whether, in view of the surrounding circumstances and the language employed in the mortgage, the parties intended the security of the mortgage to operate upon a pre-existing or subsequently created indebtedness not specifically described in the mortgage."

*Merchants Nat'l Bank v. H.L.C. Enter., Inc.,* 441 N.E:2d 509, 513 (Ind.Ct.App. 1982) (quoting Annot., 172 A.L.R. 1079, 1080 (1948)). A mortgage secures future advances "when a provision that such future advances will be covered by the lien, is made a constituent part of the original agreement." *Id.* (quoting *In re Woodruff,* 272 F.2d 696, 697 (7th Cir.1959), *cert. denied sub nom. Sparrenberger v. Nat'l City Bank,* 362 U.S. 940, 80 S.Ct. 806, 4 L.Ed.2d 770 (1960)).

Each of the three mortgages Lois signed contained the following sentence in the "Renewal and Other Indebtedness" clause: "This mortgage also secures the payment to Mortgagee of any future obligations and advances to Mortgagor to the same extent as if such future obligations and advances were made on the date of execution of this Mortgage . . . ." (App. at 17, 32, 44.) That clause could not have been written more broadly, as it encompasses *any* future obligation Lois may have to the Bank. Accordingly, the dragnet clauses attach the mortgages to the later executed guaranty. *See Smith,* 452 N.E.2d at 1064 (dragnet clause supported trial court's conclusion that mortgage secured all future promissory notes).

As a final argument, Lois asserts the Bank should be estopped from asserting the dragnet clause attached the mortgages to the guaranty. She claims she did not know about the dragnet clause but the Bank should have known the clause was in its preprinted mortgages. A party asserting equitable estoppel must demonstrate: "(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change its position prejudicially." *City of Crown Point v. Lake County*, 510 N.E.2d 684, 687 (Ind.1987). Lois cannot demonstrate she had no "means of knowledge as to the facts in question" because she signed three mortgages containing the dragnet clause at issue. Accordingly, her equitable estoppel argument fails.

The trial court did not err when it entered summary judgment for Tri–County Bank.

Affirmed.

KIRSCH, C.J., concurs.

ROBB, J., dissents with opinion.

ROBB, Judge, dissenting.

The majority declines to adopt Lois' reasoning that the Bank waived the opportunity to assert the mortgages secured the guaranty because the Bank marked the guaranty "unsecured." I agree with Lois and thus, must respectfully dissent.

I agree that the dragnet clauses in the mortgages could have attached the mortgages to the later-executed guaranty, as the language of the clauses is quite broad. *See* Op. at 385. However, the mere fact that they *could* have does not necessarily mean that they *have* to. The dragnet clause gives priority in future advances to the Bank if the Bank desires, but not does require it. That the Bank marked the

guaranty "unsecured" manifests an affirmative intention not to attach the mortgages. Under these circumstances, I would hold that the trial court erred in granting summary judgment for the Bank.