Richard KENNEDY and, Kaye Kennedy, Appellant (Plaintiffs below),

v.

GUESS, INC.; Callanen International, Inc.; Interasian Resources, Ltd. and Interasia Bag Manufacturers, Ltd., Appellee (Defendants below).

No. 29S02–0211–CV–594.

Supreme Court of Indiana.

April 21, 2004.

Frederick R. Hovde, Hovde Law Firm, Indianapolis, IN, Attorney for Appellant.

Jeffrey R. Mitchell, Yarling & Robinson, Indianapolis, IN, Attorney for Appellee.

Seth M. Lahn, Indiana University School of Law, Bloomington, IN, Additional Appearance on behalf of Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 29A02–0110–CV–674

SHEPARD, Chief Justice.

We consider here for the first time certain strict liability provisions in the Indiana Product Liability Act that render some distributors liable as though they had manufactured the product. The case arises from motions for summary judgment the trial court granted for two corporate defendants involved in distribution of an allegedly defective designer umbrella.

We conclude the defendants did not establish that they were entitled to judgment.

On a second question of first impression, we hold that those who license their trademarks for use on products that cause injury may have negligence liability proportionate to their role in the product's design, manufacturing, and distribution.

### Facts and Procedural History

Kaye Kennedy purchased a "Guess" watch at a Lazarus Department Store in Indianapolis on November 22, 1996. As a gift for purchasing the watch, she received a free umbrella also bearing the "Guess" logo. On May 22, 1998, Kaye's husband Richard took the umbrella to work, where a co-worker swung it from the handle. The umbrella's shaft separated from the handle and struck Richard in the nose and sinus, causing injury.

As amended, the Kennedys' complaint sought damages against Guess, Inc., Callanen International, Inc. (formerly known as Watches CGI, Inc.), Interasia Bag Manufacturers, Ltd., and Interasian Resources, Ltd. The complaint asserted both negligence and strict liability.

Interasia Bag, a Hong Kong corporation, manufactured the umbrella. Interasian Resources, located in New York, is a domestic affiliate of Interasia Bag. Callanen, a Connecticut corporation, is licensed by Guess to market products bearing the Guess logo, including the watch and umbrella at issue. Callanen and Guess filed cross-claims against Interasia Bag and Interasian Resources. The Kennedys attempted service of process on Interasia Bag, but were unsuccessful.

Callanen and Guess moved for summary judgment, which the trial court granted.

The Court of Appeals reversed. *Kennedy v. Guess,* 765 N.E.2d 213 (Ind.Ct.App. 2002).

We granted transfer to address: (1) how the burden of establishing the absence of any genuine issue of material fact operates with respect to a statutory provision treating the "principal distributor or seller" as a manufacturer, and (2) whether § 400 of the Restatement (Second) of Torts imposes a duty on Callanen and Guess akin to that of a manufacturer.

■ **Standard of Review.** Summary judgment should be granted only if the evidence authorized by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C). We view the facts and reasonable inferences drawn from those facts in the light most favorable to the non-moving party. *Wright v. Carter,* 622 N.E.2d 170, 171 (Ind.1993).

■ On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them the same way, although the trial court's decision is "clothed with a presumption of validity." *Id.* While the non-movant bears the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the non-movant was not wrongly denied his or her day in court. *Id.*

### I. Strict Liability Claim

Indiana's Product Liability Act (the "Act") governs all actions brought by a user or consumer against a manufacturer or seller for the physical harm caused by a product. Ind.Code § 34–20–2–1, *et seq.* (1999).[1] It provides in pertinent part that:

---

1. As adopted in 1978, the Act covered claims in tort under the theories of negligence and strict liability. *Progressive Ins. Co. v. General*

*Motors Corp.,* 749 N.E.2d 484, 486 n. 2 (Ind. 2001) (citing Ind.Code § 33–1–1.5–1 (1983)). In 1983, it was amended to apply to strict

a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer if:

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind.Code § 34–20–2–1 (1999). Actions for strict liability in tort are restricted to *manufacturers* of defective products. Indeed, the statute states the restriction rather bluntly.

A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective.

Ind.Code § 34–20–2–3 (1999). The Kennedys' strict liability claim against Callanen and Guess alleges the umbrella was unreasonably dangerous and defective because "the design, manufacture, and assembly" of the umbrella caused its shaft to separate from the handle during foreseeable use.

Callanen and Guess moved for summary judgment alleging that they were not "manufacturers" of the umbrellas and thus were entitled to summary judgment. To support their contention that they are not "manufacturers" of the umbrella or the principal distributor or seller, Callanen and Guess each submitted in affidavits from managerial employees to show that none of the factual predicates for the statutory exceptions under which a seller can be deemed a "manufacturer" were met.[2]

The affiants also stated that neither Guess nor Callanen has any ownership interest in Interasia Bag, the actual manufacturer, or its affiliate, Interasian Resources. They added that neither Guess nor Callanen is owned in whole or significant part by Interasia Bag or Interasian Resources.

This evidence was adequate to satisfy Guess and Callanen's burden of proving their contention that they are not "manufacturers" of the umbrella as defined by the Act,[3] and would, if unrebutted, have warranted summary judgment under Indiana Code § 34–20–2–3.

In response to the motion of Callanen and Guess, the Kennedys replied that they were entitled to hold the movants in the

---

liability actions only. *Id.* In 1995, the legislature reversed course. *Id.* It is now codified at Title 34, Article 20 of the Indiana Code, and both negligence and strict liability claims are cognizable under the Act.

**2.** Callanen submitted an affidavit of a fifteen-year brand manager at Guess Watches U.S.A., a division of Callanen, who was responsible for the gift umbrella promotion. Guess sub-

mitted an affidavit of its director of product licensing.

**3.** The Kennedys do not contend that either Guess or Callanen is the actual manufacturer. *Guess,* 765 N.E.2d at 218. Indeed, it appears undisputed that Interasia Bag is the actual manufacturer of the umbrellas. *Id.* at 216, 218.

lawsuit by virtue of a provision in the Act that imposes liability through treating certain parties as though they were manufacturers:

If a court is unable to hold jurisdiction over a particular manufacturer of a product or a part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of this chapter, the manufacturer of the product.

Ind.Code § 34–20–2–4 (1999) (we'll call it the "domestic distributor" exception.)

Thus, the Act may extend to Guess and Callanen only if two conditions are met: (1) Callanen and Guess must be Interasia Bag's principal distributor or seller over whom the court can hold jurisdiction; and (2) the court must be unable to hold jurisdiction over Interasia Bag, the actual manufacturer. The Kennedys supplied certain evidence in support of their contention that Guess and Callanen fit within this section.

**A. Jurisdiction over Interasia Bag.** The Kennedys attempted service on the manufacturer of the umbrella, Interasia Bag, at an address in Hong Kong, but were unsuccessful. They received an "affirmation of non-service" indicating that there was no corporation named Interasia Bag Manufacturers Ltd. at the address provided by the Kennedys and therefore service was not effected. Designating this evidence, the Kennedys claimed that Interasia Bag is "no longer in business and is not subject to the jurisdiction of this court leaving Guess and Callanen as principal distributor or seller." (Appellant's App. at 66.)

The Kennedys also point to the affidavits designated by Callanen and Guess to support that there is no basis for an Indiana court to exercise personal jurisdiction over Interasia Bag. They say there is no evidence that Interasia Bag had any contacts with Indiana or had any knowledge that its umbrellas were to be sold in Indiana. They state that Callanen ordered the umbrellas from its Connecticut office through Interasia Bag's affiliate Interasian Resources (located in New York) and made payment for the umbrellas from its Connecticut office. The umbrellas themselves were shipped from Hong Kong to Callanen's Connecticut office.

Based on the above, the Kennedys argue that the umbrellas randomly found their way into Indiana through the marketing promotions of Callanen and Guess and such is not a sufficient basis for exercising jurisdiction under Indiana Trial Rule 4.4(A). (Appellant's App. at 69, citing *North Texas Steel v. Donnelley & Sons,* 679 N.E.2d 513 (Ind.Ct.App.1997) (mere knowledge that a product is to be sold and used in a state held insufficient to subject manufacturer to jurisdiction).)

■ While this evidence is not especially impressive, it was potent enough to demonstrate a genuine issue of material fact on the question whether Callanen and Guess are manufacturers under the domestic distributor exception of Section 4. Callanen and Guess are manufacturers under the domestic distributor exception of Section 4. Summary judgment for Callanen and Guess on this point was therefore inappropriate.

In rebuttal, Callanen and Guess have argued that the lack of service on Interasia Bag resulted from less than diligent effort by the Kennedys. They say the Kennedys did not make any effort to determine whether Interasia had moved to another location in the half decade since the umbrellas were made for Callanen.

The Kennedys attempted service using a payment address found in a memo Callanen and Guess produced during discovery.

Callanen and Guess observe that the memorandum was dated August 1996 and contend that more recent documents dated January 1998 reflected a different address for Interasia Bag. They argue that the Kennedys made no effort to investigate whether they could serve Interasia Bag at the more recent address.

■ The existence of another possible address is not enough by itself to rebut the inference that jurisdiction could not be obtained. The general rule, of course, is that doubts must be resolved against the moving party. *See Indiana University Medical Center, Riley Hospital for Children v. Logan,* 728 N.E.2d 855 (Ind.2000). Callanen and Guess are always entitled to prove that the second address is in fact the correct and actual address for Interasia Bag. But because the general burden of proof falls on Callanen and Guess as movants under Trial Rule 56 there must be some additional evidence supporting their claim that the second address was a viable means to serve process on Interasia Bag.

■ Of course, Section 4 domestic distributor exception does not turn solely on whether a plaintiff achieves service of process, though the ability or inability to get service is certainly relevant. Rather, the legislature has chosen to permit liability of a domestic distributor or seller when the "court is unable to hold jurisdiction" over the actual manufacturer. *See, e.g., Bond v. E.I. DuPont,* 868 P.2d 1114 (Colo. Ct.App.1993). Whether a court can "hold jurisdiction" is obviously a mixed question of fact and law.

In the end it was for the moving party to establish that there were no material issues of fact and that they were entitled to judgment as a matter of law. On the record as far as it got developed here, they did not carry the day.

**■ B. Principal Distributor or Seller.** To impose liability on a non-manufacturer, the claimant must also demonstrate that the defendant is a "principal distributor or seller."

The code tells us what a "seller" is when it says that "for purposes of Indiana Code § 34-20, ["a seller"] means a person engaged in the business of selling or leasing a product for resale, use or consumption." Ind.Code § 34-6-2-136 (1999). The code does not tell us what a "principal" means or what a "distributor" is.

Black's Law Dictionary defines "principal" as chief; leading; most important or considerable; primary; original. *Blacks Law Dictionary* 1210 (7th Edition 1999). "Distributor" is defined as "any individual, partnership, corporation, association, or other legal relationship which stands between the manufacturer and the retail seller in purchases, consignments, or contracts for sale of consumer goods; a wholesaler." *Black's Law Dictionary* 475-76 (6th Edition 1990).

We agree with the Kennedys that based on the language in Indiana Code § 34-20-2-4, it seems clear the legislature's object was to provide a remedy for Indiana consumers who are injured by defective products manufactured by an overseas entity over which Indiana courts have no jurisdiction. Achieving this objective would hardly require imposing liability on all distributors, and the language chosen by the General Assembly creating an exception to the general policy against liability seems consistent with that fact. Ind.Code § 34-20 ("that manufacturer's principal distributor or seller").

In responding to the motion for summary judgment, the Kennedys designated as a material fact that the umbrella bore only a "Guess" logo. They also presented invoices produced by Callanen regarding its orders from Interasia Bag. These docu-

ments demonstrate that in August 1996 Callanen ordered and paid for 1,500 tri-fold umbrellas, amounting to $5625. In September 1996, Callanen purchased an additional 15,000 tri-fold umbrellas and 3,000 Guess tri-fold umbrellas all at a cost of $56,250. The evidence reveals that in 1996 Callanen purchased more than 93,000 umbrellas from Interasia Bag.

Between April and September of 1996, Callanen purchased other items from Interasia Bag, such as rafts, binders, bags, umbrellas, agendas and coolers. The value of items Callanen bought from Interasia Bag during this six-month period was about $235,000. All the documented purchases thus totaled nearly $617,000.

The volume of business established from the above evidence sufficiently establishes a genuine issue of material fact as to whether Callanen is a "principal distributor." Such evidence, however, does not create a factual issue as to whether Guess may be deemed a "principal distributor." It satisfies the second condition as to Callanen but not as to Guess.

Where Guess is concerned, the designated information shows that Guess is not a distributor or seller of *any* sort, principal or otherwise. Guess neither ordered nor received the umbrellas at issue. It was never in possession of any of the umbrellas nor did it manufacture, supply, distribute, assemble, design, or sell them. Rather, Guess simply licensed its name to Callanen for placement on various products. There is no issue of fact disputing Guess' contention that it is not a "principal distributor or seller." Summary judgment in favor of Guess on this issue was proper.

Callanen, on the other hand, was not entitled to summary judgment on this issue. Kennedy's evidence provided an inference that Callanen is the principal distributor, so Callanen was required to rebut the inference. To do so, Callanen relied solely on the designated affidavits, which contained a plain statement indicating that Callanen is not a principal distributor or seller.

A simple statement that "Callanen is not a principal distributor or seller" is not sufficient. There must be some additional evidence showing why Callanen cannot be deemed a principal distributor. Accordingly, we conclude that Callanen did not demonstrate an absence of a genuine issue of material fact, and summary judgment on this issue as to Callanen was not warranted.

## II. § 400 Negligence Claim

We first note that § 400 of the Restatement (Second) of Torts applies only to the Kennedys' negligence claim and not to their strict liability claim. This is in accord with comment b to § 400, which refers to sections dealing primarily with negligence (§§ 394–98) and with the decision in *Dudley* where the Court of Appeals interpreted section 400 and explained the rationale supporting this provision's adoption in terms of "negligence." *See Dudley Sports Co. v. Schmitt,* 151 Ind.App. 217, 279 N.E.2d 266, 273 (1972).

To prevail in a negligence action, the claimant must establish: (1) a duty, (2) a breach of that duty, and (3) injury resulting from that breach. *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933 (Ind.Ct. App.1996). Ordinarily, summary judgment is inappropriate in negligence cases. *Dillman v. Great Dane Trailers, Inc.,* 649 N.E.2d 665 (Ind.Ct.App.1995). Issues of duty, however, are questions of law for the court and may be appropriate for disposition by summary judgment. *Holt v. Quality Motor Sales, Inc.,* 776 N.E.2d 361 (Ind. Ct.App.2002).

Citing *Dudley* Sports, the Kennedys argue that Guess and/or Callanen owe them a duty because Guess and/or Callanen can be considered "apparent manufacturers" of the umbrella under § 400. Section 400 provides, "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."[4] Restatement (Second) of Torts § 400 (1965).

The court in *Dudley Sports* employed § 400 to hold a vendor liable for the negligence of the manufacturer where the vendor placed its name on the product and gave no indication of who was the actual manufacturer. The *Dudley* court reasoned:

> When a vendor puts his name exclusively on a product, in no way indicating that it is the product of another, the public is induced to believe that the vendor was the manufacturer of the product. This belief causes the public to rely upon the skill of the vendor. When products are held out in this manner, the ultimate purchaser has no available means of ascertaining who is the true manufacturer. By this act of concealment, the vendor vouches for the product and assumes the manufacturer's responsibility as his own.

*Dudley Sports*, 279 N.E.2d at 273. A similar conclusion was reached in *Lucas v. Dorsey Corp.*, 609 N.E.2d 1191 (Ind.Ct. App.1993). This case represents our first occasion to explore the liability of trademark licensors.

■ The Court of Appeals reversed summary judgment on this claim finding that "a question of fact remains as to whether Guess or Callanen or both exercised the requisite degree of involvement

in the stream of commerce to be considered an apparent manufacturer." *Guess*, 765 N.E.2d at 222. We think this does not hold true with respect to Callanen.

Callanen argues that *Dudley Sports* and § 400 are inapplicable to it because, as the undisputed record shows, Callanen's name is not on the umbrella and it in no way held itself out as the umbrella's manufacturer. (Appellees' Pet. for Transfer at 14.)

■ Whether a "holding out" has occurred should be judged from the viewpoint of the purchasing public, examining whether the public has been induced to believe that the vendor was the actual manufacturer of the product. *See Hebel v. Sherman Equipment*, 92 Ill.2d 368, 65 Ill. Dec. 888, 442 N.E.2d 199 (1982). There is nothing to suggest that the Kennedys were induced to believe Callanen was the manufacturer of the umbrella in question. The only name on the umbrella was "Guess"; the name "Callanen" was nowhere to be found.

To support their claim that Callanen *held itself out* as the umbrella's manufacturer, the Kennedys rely heavily on the fact that Callanen and Guess had a trademark licensing agreement which gave Callanen the right to distribute products bearing the Guess name. Such evidence does not suggest Callanen held itself out as the manufacturer. From the consumer's perspective, Callanen had nothing to do with the manufacture of the umbrella. There is no reference to Callanen that would lead a reasonable purchaser to believe that it was the manufacturer of the umbrella.

That Callanen was permitted to use the Guess name is by itself insufficient to hold it liable as an "apparent manufacturer" under the *Dudley Sports* rule. Callanen

---

4. Comment (a) to § 400 defines "one who puts out a chattel" as "anyone who supplies it to others for their own use or for the use of third persons, either by sale or lease or by gift of loan."

did not design, manufacture, assemble, or test the umbrella. Any involvement Callanen had with the umbrella occurred after it was designed and manufactured. While Callanen did purchase the umbrellas for distribution, it received the umbrellas already packaged for distribution from Interasia Bag. (Appellant's App. at 94.) Generally, Callanen did not even open the packaging unless it was going to send less than ten umbrellas to a particular store. *Id.*

Callanen presented sufficient evidence to demonstrate that it did not hold itself out as a manufacturer. The burden thus shifted to the Kennedys to demonstrate otherwise, and they have failed to carry their burden. The trial court was correct to grant Callanen summary judgment on the negligence claim.

■ We reach a different conclusion as to whether *Guess* could be considered an "apparent manufacturer."

Some jurisdictions impose liability on trademark licensors without any additional involvement in the stream of commerce. *See, e.g., Carter v. Joseph Bancroft & Sons Co.*, 360 F.Supp. 1103 (E.D.Pa.1973); *Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979). Guess argues that merely licensing the use of its trademark is insufficient to hold it liable under § 400 and that something more should be required. (Appellee's Br. at 18–20; Appellant's App. at 11–13.) Guess relies on Chief Justice Peters' observation for the Connecticut Supreme Court that although "a non-manufacturer may under certain circumstances be held liable in the same manner as a manufacturer or seller of a defective product ... most cases impose liability [under section 400] only after finding that the licensor had a significant role in the chain of distribution." *Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 579 A.2d 26, 33–34 (1990).

Justice Peters explained that in jurisdictions where "additional involvement" is required, various factors determine whether there is sufficient involvement in the stream of commerce such that an entity is an "apparent manufacturer." *Id.* at 33–35. Some factors courts examine to make this determination are the licensor's right of control over the product design, the fees received for the use of the trademark, the prominence of the trademark, supply of components, participation in advertisement and the degree of economic benefit to be gained from the licensing agreement. *Id.*

In the *Petrol Plus* case, General Motors had licensed the use of its trademarked Dextron II transmission fluid. The fluid was actually manufactured by other companies, subject to GM testing, and eventually sold to Burkert by Petrol Plus. The Connecticut court held that General Motors was not an entity that "put out" the product since "GM was in no way involved with the sale, leave, gift or loan of the defective automatic transmission fluid." *Id.* at 33. This distinguished GM's role from that played by Armour & Co., which the Connecticut high court had earlier held to be an apparent manufacturer of a can of corned beef labeled "Armour Veribest Products" from "Armour and Company, Foreign Distributors." *Burkhardt v. Armour & Co.*, 115 Conn. 249, 161 A. 385 (1932). The can had been placed in American commerce by Armour & Co., an Illinois corporation, which had obtained it from an Argentine Company named "Frigoritico Armour de la Plata," which had purchased it from an Argentine packing corporation, and so on. *Id.* at 391.

Indiana's *Dudley Sports* decision bears some of the characteristics of Armour. Dudley Sports put its own name on a baseball pitching machine manufactured by someone else and acted as the exclusive

distributor of the device. *Dudley Sports*, 279 N.E.2d at 271.

The present case is more like *Petrol Plus*. Like General Motors, Guess exercised some control over the product itself (like approving placement of the logo) but did not play any role as seller, manufacturer or distributor.

It might well be plausible to assess whether a trademark licensor is, as the Restatement puts it, "subject to the same liability as though he were [the product] manufacturer," by pouring over the licensor's level of involvement in the manufacture or distribution of the product. On the other hand, such an approach creates a regime in which liability is binary (either the same as the manufacturer or altogether non-existent) based on the examination of commercial activity that is anything but.

■ As Chief Justice Peters pointed out in *Petrol Plus*, trademark licensors have a duty under the Lanham Act to take reasonable measures to detect and prevent misleading or deceptive uses of the trademark. *Petrol Plus*, 579 A.2d at 32. They are thus likely to take some ongoing role in the products bearing their mark lest they risk loss of the right associated with ownership of it.

A common law product liability system that, when it encounters muscular supervision by a licensor, imposes liability identical to that of the manufacturer, however, pushes the trademark holder in the opposition direction. It encourages the licensor to play as minor a role as possible in overseeing the design and manufacturing of products bearing the mark in order to preserve the "Sergeant Schultz" defense.[5] This is hardly in the best interest of consumers.

■ Thus, we conclude that Indiana common law should treat trademark licensors as having responsibility for defective products placed in the stream of commerce bearing their marks, but only so much of the liability for those defects as their relative role in the larger scheme of design, advertising, manufacturing, and distribution warrants. Consumers rightly expect that products bearing logos like "Guess" have been subject to some oversight by those who put their name on the product, but those same consumers can well imagine that in modern commerce the products they buy may have actually been manufactured by someone else.

■ The process of sorting out comparative fault in such settings can well be left to juries. Summary judgment for Guess on the negligence claim was inappropriate.

## Conclusion

Genuine issues of material fact exist as to whether Callanen can be deemed a manufacturer under the "principal distributor or seller" exception and also as to whether

---

**5.** In *Indiana Dept. of State Revenue v. Safayan*, 654 N.E.2d 270, 274 (Ind.1995) we explained the "Sergeant Schultz" defense:

The Sergeant Schultz defense refers, of course, to the refrain of the character by that name in the television comedy, Hogan's Heroes. Sergeant Schultz was assigned the unenviable task of guarding Colonel Hogan and his men in a German prisoner of war camp during World War II. Each week, despite the best efforts of the camp's commandant, Colonel Klink, the 'prisoners' would successfully conduct espionage operations from inside the prison. And each week, the lovable, if incompetent, sergeant would stumble upon some clue to Hogan's activities. Instead of pursuing these leads, however, Schultz would simply declare, "I know n-o-t-h-i-n-g, n-o-t-h-i-n-g." Cf. *Ortho Pharmaceutical Corp. v. Sona Distributors, Inc.*, 663 F.Supp. 64, 66 (S.D.Fla.1987) (rejecting Sergeant Schultz defense to fraudulent misrepresentation claim).

Guess can be held liable under the "apparent manufacturer" theory, thus precluding summary judgment. Therefore, we affirm in part and reverse in part, as indicated above.

SULLIVAN and RUCKER, JJ., concur.

DICKSON, J., concurs in result without separate opinion.

BOEHM, J., concurs in result with separate opinion in which DICKSON, J., joins.

BOEHM, J., concurring in result.

As I see it, disposition of this appeal is governed by the basic rules of summary judgment practice. The plaintiffs plead in their complaint that they were injured in Indiana by a defective umbrella. They plead negligent design and manufacture in Count I and strict liability in Count II. Both counts are governed by the Indiana Product Liability Act. Ind.Code § 34-20-1-1 (1998). The plaintiffs allege that Guess (the licensor of the trademark) and Callanen (the distributor) are liable for a defect in a product manufactured by Interasia. To get summary judgment, these defendants must establish by uncontroverted evidence that plaintiffs have no claim.

Both Guess and Callanen establish by undisputed evidence that they had no role in the design or manufacture of the umbrella. For the reasons the majority gives, I agree that Guess may be liable as an "apparent manufacturer" but Callanen is entitled to summary judgment on the negligence claim. And, as the majority holds, summary judgment as to Guess is proper on the strict liability claim. Guess established by undisputed evidence that its sole relationship to the product is as trademark licensor. It is therefore neither a manufacturer nor a principal distributor and has no strict liability under the Product Liability Act. The plaintiffs designated no evidence that controverted the facts relevant to Guess's motion, so Guess is entitled to summary judgment.

I agree with the result, but not the reasoning, as to Callanen's motion for summary judgment on the strict liability claim. Callanen established that it was not the manufacturer of the umbrella, but designated no evidence establishing that it is not the "principal distributor" of a product manufactured by a manufacturer who cannot be haled into court in Indiana. Because plaintiffs' complaint pleads that Callanen is strictly liable for the defect, I think that allegation is sufficient under notice pleading to claim that Callanen is either a manufacturer or a "principal distributor." Under Trial Rule 56 it is Callanen's burden to establish neither is the case, which it could do by showing that 1) it is not a distributor, or 2) somebody else is Interasia's principal distributor, or 3) that Interasia is susceptible to suit in Indiana. Whatever "principal distributor" means, any of these facts would negate Callanen's status as a person liable under the Product Liability Act. But Callanen's motion and designated evidence established none of these. The only reference in the designated evidence to Callanen's status as a "principal distributor" is the bald assertion in an affidavit by a Callanen executive that "Callanen is not the principal seller or distributor for Interasian Bag Manufacturers, LTD." As the majority holds, this is a legal conclusion, not an assertion of facts. As such it is insufficient to support summary judgment. *Meyer v. Marine Builders, Inc.,* 797 N.E.2d 760, 768 (Ind.Ct.App.2003). So Callanen's motion should be denied on that ground, and there is no need to consider the materials the plaintiff submitted in opposition to the motion.

I also do not believe the plaintiffs' efforts to serve Interasia are relevant to Callanen's liability under the Product Liability Act. Callanen is liable, if at all, as a

"principal distributor" of a product from a manufacturer over whom Indiana is "unable to hold jurisdiction." Plaintiffs' failure to effect service of process at the address it used for Interasia relates to service of process, not to whether Interasia is subject to personal jurisdiction in Indiana. For all we know from the record cited by the majority, Interasia operates a major manufacturing facility in Indiana, and certainly could be sued in this state, but moved its headquarters in Hong Kong to a new address. As the majority points out, the purpose of distributor liability is to provide someone who is responsible for a defective product shipped into Indiana if its manufacturer is beyond the reach of the courts of this State. Lack of personal jurisdiction over the manufacturer, not defective service, is the test whether the manufacturer can be sued in Indiana. Defective service of process is curable, but only if the manufacturer is not subject to the jurisdiction of Indiana courts is this state "unable to hold jurisdiction." For that reason as well, I do not subscribe to the majority's methodology of resolving Callanen's motion.

DICKSON, J., joins.