**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 07 2014, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**TIMOTHY F. DEVEREUX**
**LANCE R. LADENDORF**
Ladendorf & Ladendorf
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**SHERI BRADTKE MCNEIL**
**AMI T. ANDERSON**
Kopka, Pinkus, Dolin & Eads, PC
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CHRISTIAN DAILEY, ) | |
| ) | |
| Appellant-Plaintiff, ) | |
| ) | |
| vs. ) | No. 49A02-1310-CT-906 |
| ) | |
| DAVIS BUILDING GROUP, ) | |
| ) | |
| Appellee-Defendant. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David A. Shaheed, Judge
Cause No. 49D01-1107-CT-26491

**April 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Christian L. Dailey ("Dailey") appeals the trial court's order granting Davis Building Group, LLC's ("Davis") motion for summary judgment on his negligence claim.

We affirm.

**Issue**

Dailey raises a single question for our review: Is summary judgment appropriate where the designated evidence does not disclose an exception to the general rule that the principal is not responsible for the negligence of an independent contractor.

**Facts and Procedural History**

In February 2011, Dailey was employed as a roofer for RMR Construction ("RMR"). RMR was a subcontractor for Davis, which was building houses in a residential neighborhood in Indianapolis. Davis had contracted RMR to perform certain roofing work on several of these homes.

On the morning of February 12, 2011, Dailey went onto the roof of one of the houses for which RMR had been retained to provide roofing work. Ice had accumulated in a few places on the roof, and Dailey was chipping ice from an unguttered valley on the roof. The ice slid out from under Dailey; he fell from the roof of the house to the ground—a distance of around twenty to twenty-five feet—and was injured. Neither RMR nor Davis had issued Dailey a safety harness or other fall-prevention equipment.

On July 7, 2011, Dailey filed a complaint for damages against Davis. Dailey alleged that Davis was negligent in failing to provide a safe worksite, in failing to establish and

implement a safety protocol, failing to inspect the worksite for hazards and safety code violations, failing to correct hazards and safety code violations, and in failing to provide safety devices, which negligence resulted in Dailey's injuries.

On May 1, 2013, Davis filed its motion for summary judgment. In the motion, Davis contended that it did not owe any duty of care to Dailey under either a contractual or assumption of duty theory, and it was thus entitled to judgment as a matter of law. Dailey timely responded to the motion.

On August 15, 2013, the trial court conducted a hearing on Davis's motion for summary judgment. At the conclusion of the hearing, the trial court took the motion under advisement.

On September 24, 2013, the trial court entered summary judgment in favor of Davis. This appeal ensued.

**Discussion and Decision**

Dailey appeals the trial court's entry of summary judgment. We review an appeal from a motion for summary judgment under the same standard as the trial court uses to decide such motions. Sheehan Const. Co., Inc. v. Continental Cas. Co., 938 N.E.2d 685, 688 (Ind. 2010). Summary judgment is appropriate only when the evidence shows there is no question of material fact and the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Sheehan, 938 N.E.2d at 688. All facts and reasonable inferences to be drawn therefrom are construed to favor the non-movant. Sheehan, 938 N.E.2d at 688. Review of a

motion for summary judgment is confined to those evidentiary materials designated to the trial court.  Id.

An order granting summary judgment is clothed with a presumption of validity. Gagan v. Yast, 966 N.E.2d 177, 184 (Ind. Ct. App. 2012), trans. denied.  A grant of summary judgment may be affirmed upon any theory supported by the designated materials.  Spudich v. NIPSCO, 745 N.E.2d 281, 290 (Ind. Ct. App. 2001), trans. denied.  However, we are mindful that we must carefully review the trial court's decision to ensure the non-movant was not improperly denied his day in court.  Reeder v. Harper, 788 N.E.2d 1236, 1240 (Ind. 2003).

Summary judgment is rarely appropriate in negligence cases.  Kennedy v. Guess, Inc., 806 N.E.2d 776, 783 (Ind. 2004).  In particular, such issues as negligence, contributory negligence, causation, and reasonable care are often properly reserved for a trier of fact. Florio v. Tilley, 875 N.E.2d 253, 256 (Ind. Ct. App. 2007), trans. denied.  However, questions of law, such as whether a defendant had a duty of care as to a plaintiff, may be appropriate for summary judgment.  See, e.g., Kroger Co. v Plonski, 930 N.E.2d 1, 9 (Ind. 2010); Florio, 875 N.E.2d at 256.

To prevail on a claim of negligence, a plaintiff must show: (1) that the defendant owed the plaintiff a duty of care; (2) that the defendant breached that duty by allowing conduct to fall below the applicable standard of care; and (3) the plaintiff's injury was compensable and proximately caused by the defendant's breach of duty.  Kroger, 930 N.E.2d at 6.  Davis moved for summary judgment on the question of duty, and Dailey appeals that decision.

4

Dailey contends that Davis had a non-delegable duty of care as to his safety, and the trial court thus erred when it granted Davis's motion for summary judgment on that matter.[1] "In Indiana, the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor." Bagley v. Insight Commc'ns. Co., L.P., 658 N.E.2d 584, 586 (Ind. 1995). There are five common law-based exceptions to this general rule, each of which finds its basis in public policy concerns that preclude delegation of duty from a principal to an independent contractor, because the principal's "responsibilities are deemed 'so important to the community' that the employer should not be permitted to transfer these duties to another." Id. at 587. A principal cannot delegate its duty of care as to a third party where: (1) the contract requires performance of intrinsically dangerous work; (2) the principal is by law or contract charged with performing the specific duty alleged to have been breached; (3) the act will create a nuisance; (4) the act to be performed will probably cause injury to others unless precautions are taken; and (5) the act to be performed is illegal. Vaughn v. Daniels Co. (W. Va.), Inc., 841 N.E.2d 1133, 1143 (Ind. 2006).

Dailey argues that the second of these exceptions, that Davis had a non-delegable duty as a matter of contract, applies in this case and that there was at least a question of material fact concerning whether Davis had a non-delegable duty of care. This exception allows for an "actionable" incidence of negligence when "a contract affirmatively evinces intent to assume a duty of care." Stumpf v. Hagerman Const. Corp., 863 N.E.2d 871, 876-77 (Ind. Ct. App. 2007), trans. denied. Dailey contends that the language of a Davis-drafted Trade

---

[1] Dailey argues in his briefs before this Court that he, and not Davis, was entitled to summary judgment on the question of duty of care.

Contractor Agreement ("TCA") contains language that creates a contractual duty of care, and thus he, not Davis, was entitled to summary judgment on the duty-of-care question. In the alternative, Dailey argues that there is a question of material fact as to whether Davis had a non-delegable duty of care under its contract with RMR, and thus the trial court's entry of summary judgment was improvident. Dailey does not, however, contend that Davis or any of its agents acted outside the scope of the agreement with RMR in such a manner as to gratuitously or voluntarily assume a duty of care. See Hunt Const. Group, Inc. v. Garrett, 964 N.E.2d 222, 225 (Ind. 2012) (observing that a construction manager owes a worker a duty of care for safety when that duty is imposed by contract or when such duty is assumed gratuitously or voluntarily) (citing with approval Plan-Tec, Inc. v. Wiggins, 443 N.E.2d 1212 (Ind. Ct. App. 1983)).

In support of the proposition that Davis had a non-delegable duty of care for his safety, Dailey directs our attention to the language of the TCA.[2] Dailey contends that the TCA governed the relationship between Davis and RMR, and that the terms of the TCA as they pertain to RMR's obligations to Davis regarding workplace safety matters also established Davis's duty of care towards him. Davis denies that the TCA had any bearing upon the relationship between itself and RMR in this case because there is no evidence of an executed TCA between Davis and RMR, and that as a result it had no contractually-based safety obligations toward Dailey. Dailey responds that even if there was no TCA binding

---

[2] Dailey obtained copies of the TCA in the discovery process. None of these bear RMR's name or the name of any individual alleged to be an agent of RMR, nor are the documents signed by anyone from RMR.

6

RMR and Davis with respect to the job Dailey was doing when he fell, the TCA's provisions are indicative of the general course of dealings between RMR and Davis and thus apply here.

When construing a contract, our primary task is to give effect to the intent of the parties. Ryan v. Lawyers Title Ins. Co, 959 N.E.2d 870, 876 (Ind. Ct. App. 2011). Where there is no ambiguity, unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. Id. We interpret a contract in a manner "that harmonizes all the various parts so that no provision is deemed to conflict with, to be repugnant to, or to neutralize any other provision." Id. We construe specific provisions to control over general provisions. Id.

Here, Dailey directs us to several provisions of the TCA that, he argues, imposed a non-delegable duty of care on Davis. Several of these do not, by their plain meaning, have any bearing upon safety questions. For example, Dailey points to Davis's authority to cancel purchase orders and remove subcontractors if the amount of work available exceeds the subcontractor's capacity, and notes that Davis reserves a right under the TCA to approve the subcontractor's designated job foreman. Yet these provisions have no specific bearing on safety matters, and place duties upon the subcontractor, not upon Davis.

More on-point are provisions in the TCA that provide Davis the right to assess fines against subcontractors for violations of certain safety requirements, including those associated with safety regulations promulgated by the U.S. Occupational Safety and Health Administration ("OSHA"). Yet our review of the provisions of the TCA reveals the following language:

7

Trade Contractor shall supervise and direct the Work using Trade Contractor's best efforts and skill. Trade contractor shall be responsible to the Owner for the acts and omissions of Trade Contractor's agents, sub-agents and employees. Trade Contractor shall take all necessary precautions for the safety of employees and protection of the Work and of adjoining property, and shall comply with all applicable provisions of Federal, state and local safety laws and building codes, including, without limitation, the Occupations Health and Safety Act of 1970, as amended, and Owner's insurance carriers' requirements to prevent accidents, injury to persons, loss of life and damage to property. Trade Contractor shall adopt and enforce a written safety program and shall provide Owner at Owner's request with a copy of that program.

(App'x at 129, emphasis added.) The TCA goes on to assign to the Trade Contractor—that is, the subcontractor—numerous duties regarding the establishment, monitoring, and compliance with a safety plan.

The TCA also provides for numerous matters of insurance and indemnity. Crucially, the indemnity clauses provide:

To the fullest extent permitted by law, Trade Contractor shall indemnify, defend and hold harmless Owner and Owner's respective officers, directors, employees, affiliates and related parties from and against any and all claims for bodily injury or death, … damages, actions, causes of action, suits, losses, judgments, obligations and any liabilities … which arise or are in any way connected with the Work performed … or services provided under this Agreement by Trade Contractor or its agents, sub-agents or employees. These indemnity and defense obligations shall apply to any acts or omissions or negligence of indemnified parties, whether active or passive … whether or not said claims arise out of the concurrent act, omission or negligence of the indemnified parties, whether active or passive. However, Trade Contractor shall not be obligated to indemnify or defend Owner for claims found to be due to the sole negligence or willful misconduct of indemnified parties.

(App'x at 131.) Thus, to the extent the TCA provides any affirmative duty upon the parties for safety policies and practices, those duties are expressly imposed upon the Trade Contractor—here, RMR—and not Davis.

8

Further, based upon the deposition testimony designated at summary judgment, we cannot conclude that there is any question of material fact as to whether the conduct of Denny Branham ("Branham"), Davis's construction manager, imposed a contractually-based duty of care upon Davis. Branham acknowledged that he was the individual Davis identified in a set of interrogatories as most knowledgeable about safety issues. However, Branham testified that he was unaware of any safety programs at Davis at the time of Dailey's injuries. He further testified that he had not, prior to Dailey's injuries, imposed any of the fines associated with workplace safety violations, and he had not conducted any safety training or imposed any jobsite safety requirements on Davis's behalf or otherwise. The extent of Branham's safety-related activity was limited to, while present at a jobsite, instructing contractors at jobsites to avoid using saws with improperly-repaired extension cables and to warn individuals to use safety equipment.

Even assuming the duties of care expressed in the TCA were applicable, and construing the designated materials in a light most favorable to Dailey, we cannot conclude that there was any question of material fact as to Davis's duty or lack of it toward Dailey, nor can we conclude that Davis had a legally-prescribed contractual duty for Davis's safety. We accordingly affirm the trial court's entry of summary judgment in favor of Davis.

Affirmed.

KIRSCH, J., and MAY, J., concur.

9