

FILED

Jun 09 2023, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin L. Moyer
Moyer Law Firm, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Adam S. Willfond
Francis A. Veltri
Travelers Staff Counsel Indiana
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erie Insurance Exchange,

*Appellant-Plaintiff,*

v.

Myron Corporation,

*Appellee-Defendant.*

June 9, 2023

Court of Appeals Case No.
22A-CT-2699

Appeal from the Montgomery
Superior Court

The Honorable Heather L. Barajas,
Judge

Trial Court Cause No.
54D01-1907-CT-812

**Opinion by Judge Riley**
Chief Judge Altice and Judge Pyle concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Erie Insurance Exchange (Erie Insurance), appeals the trial court's denial of its motion to consider Appellee-Defendant, Myron Corporation (Myron), as the manufacturer of a power bank charger in order to apply strict liability pursuant to the Indiana Product Liability Act's domestic distributor exception, Ind. Code § 34-20-2-4, and the trial court's grant of Myron's motion to dismiss Erie Insurance's strict liability claim.

We affirm.

## ISSUE

Erie Insurance presents this court with one issue on appeal, which we restate as: Whether the trial court erred when it denied Erie Insurance's motion to consider Myron to be the domestic distributor of a power bank charger pursuant to the Indiana Product Liability Act (IPLA).

## FACTS AND PROCEDURAL HISTORY

On May 22, 2018, a fire occurred at the residence of Kevin and Heather Roberts (collectively, Roberts), located in Crawfordsville, Indiana. At the time of the fire, the Roberts' home was insured under a homeowners insurance policy held by Erie Insurance. After tendering insurance benefits of more than $248,000 to Roberts for fire-related property damage, Erie Insurance filed a subrogation suit in July 2019 against Myron, alleging that the fire loss resulted from a defect in a power bank charger which was "manufactured and sold" by Myron. (Appellant's App. Vol. II, p. 19). Specifically, in its Complaint, Erie

Insurance advanced two claims: (1) a negligence claim, contending that Myron was negligent for failing to warn, inspect, or test the power bank charger; and (2) a claim under the IPLA, contending that Myron was strictly liable pursuant to the domestic distributor exception, I.C. § 34-20-2-4.

[5]     Myron is a family-owned promotional products company located in Maywood, New Jersey. It purchases products from suppliers, which it then resells with a focus on personalized business products. Myron's customers order from its online catalogue, after which Myron personalizes the product with a business name, logo, or other customer-requested customization. Myron does not alter the products during this personalization process. After receiving Erie Insurance's Complaint, Myron timely filed its Answer. In its Answer, Myron denied that it had manufactured the power bank charger and named, among its affirmative defenses, Shenzhen C-Star Electric Technology Company, Ltd. (Shenzhen), as the manufacturer of the power bank charger and as a non-party liable for Erie Insurance's damages. Myron included two separate addresses in China for Shenzhen, along with a company website. During discovery, Myron clarified that it had purchased the lot of power bank chargers from NINGBO C-Star Import & Export (NINGBO), located in China, and provided an address in China. Erie Insurance did not amend its Complaint to add Shenzhen or NINGBO as party-defendants.

[6]     On September 15, 2021, Erie Insurance moved the trial court for an order requesting it to consider Myron to be the manufacturer of the power bank charger under Indiana Code section 34-20-1-4 of the IPLA. In support of its

motion, Erie Insurance designated an affidavit by a senior subrogation specialist with Erie Insurance. The affidavit alleged that no records could be found of Shenzhen being registered to do business in Indiana, nor were there any records of the company seeking qualifications to do business in Indiana. The affidavit further averred that there was no evidence of Shenzhen maintaining a bank account, mailing address, post office box, or a telephone number in Indiana; purchasing goods or materials in Indiana; maintaining an office, warehouse, or place of business in Indiana; having any employees, officers, business agents, directors, or representatives residing in or assigned to Indiana; being a party to litigation in Indiana; or selling goods directly to any party in Indiana.

[7] On September 24, 2021, Myron filed a response in opposition to Erie Insurance's motion, together with a motion to dismiss Erie Insurance's strict liability claim based on Indiana Trial Rule 12(B)(6), contending that Erie Insurance had failed to establish that the trial court was unable to obtain personal jurisdiction over Shenzhen or that Myron was Shenzhen's principal distributor or seller of the power bank chargers pursuant to Indiana Code section 34-20-1-4. On September 30, 2021, Erie Insurance responded to Myron's motion, emphasizing that even though Myron was not the manufacturer of the power bank charger, it was still a seller of the product. Erie Insurance also noted that Myron had not contradicted Erie Insurance's affidavit elaborating on the difficulties in obtaining service on Shenzhen. On February 8, 2022, Myron filed a supplement to respond to Erie Insurance's reply, which included an affidavit by Steve Kjekstad (Kjekstad), Myron's vice president of

supply chain. The affidavit alleged that Myron had purchased the power bank charger from NINGBO, who, in turn, appeared to have purchased the power bank charger from the manufacturer, Shenzhen. The affidavit also averred that Myron's purchase did not comprise a significant percentage of Myron's overall business, nor did it comprise a significant percentage of the import of the product overall from Shenzhen.

[8] On February 24, 2022, the trial court conducted a hearing on the competing motions. After hearing arguments, the trial court granted Erie Insurance's motion to strike certain statements from Kjekstad's affidavit. On April 24, 2022, the trial court denied Erie Insurance's motion to declare Myron to be the manufacturer of the power bank charger under the IPLA and granted Myron's motion to dismiss Erie Insurance's strict liability claim. On October 12 through October 13, 2022, the trial court conducted a jury trial on the remaining negligence claim. At the close of the evidence, the jury returned a verdict in favor of Myron.

[9] Erie Insurance now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[10] Myron filed, and the trial court granted, a motion pursuant to Trial Rule 12(B)(6), which allows for the dismissal of a cause for "[f]ailure to state a claim upon which relief can be granted[.]" If, while making a 12(B)(6) motion, "matters outside the pleading are presented to and not excluded by the court,

the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *See* T.R. 12(B). Here, both parties agree that the trial court, in its decision to dismiss Erie Insurance's strict liability claim, considered evidence and material outside the pleading. As such, Myron's motion to dismiss should be converted to a motion for summary judgment under Indiana Trial Rule 56. *See Lanni v. Nat'l Collegiate Athletic Ass'n*, 989 N.E.2d 791, 795 (Ind. Ct. App. 2013).

[11] When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enters., LLC,* 84 N.E.3d 1174, 1176 (Ind. 2017). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State,* 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of showing the absence of any genuine issue of material fact as to a determinative issue. *Id*.

[12] Our review is limited to those facts designated to the trial court, and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party. T.R. 56(H); *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). Because we review a summary judgment ruling *de novo*, a trial court's findings and conclusions offer insight into the rationale for the court's

judgment and facilitate appellate review but are not binding on this court. *Denson v. Estate of Dillard*, 116 N.E.3d 535, 539 (Ind. Ct. App. 2018). Additionally, we are not constrained by the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence. *Id.*

## II. *Indiana's Product Liability Act*

[13] Product liability actions in Indiana are governed by the IPLA, Indiana Code section 34-20-2-1, *et. seq.*, which provides, in pertinent part:

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer if:
>
> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
>
> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

I.C. § 34-20-2-1. Actions for strict liability in tort are restricted to manufacturers of defective products. Indeed, the statute states the restriction rather bluntly:

> A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective.

I.C. § 34-20-2-3. In this regard, the statute defines a manufacturer, for purposes of Indiana Chapter 34-20, as "a person or an entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." I.C. § 34-6-2-77(a). Pursuant to subsection (b), "a seller who discloses the name of the actual manufacturer of a product is not a manufacturer merely because the seller places or has placed a private label on a product." I.C. § 34-6-2-77(b).

A. *Indiana Code section 34-6-2-77(b)*

[14] In support of its motion to dismiss, which was converted to a summary judgment motion, Myron, as seller of the power bank charger, contends—for

the first time on appeal[1]—that it was not the manufacturer of the power bank charger because—as conceded by both parties—Myron personalized the power bank charger with a private label for promotional purposes without manipulating the product and named Shenzhen as the actual manufacturer in its Answer and Affirmative Defenses. *See* I.C. § 34-6-2-77(b).

[15] Notwithstanding that Myron personalized the power bank charger and provided Shenzhen's contact information, in order to be exempt from the IPLA's application, the statute quantified that Myron must "merely" personalize the product to remain characterized as a seller, and not be considered a manufacturer. *See* I.C. § 34-6-2-77(b). We note that "[t]he goal of statutory construction is to determine, give effect to, and implement the intent of the General Assembly." *Sanders v. Bd. of Comm'rs of Brown Cnty.*, 892 N.E.2d 1249, 1252 (Ind. Ct. App. 2008), *trans. denied.* "When construing a statute, the legislature's definition of a word binds us." *United Rural Elec. Membership Corp. v. Ind. Mich. Power Co.,* 716 N.E.2d 1007, 1013 (Ind. Ct. App. 1999), *trans. denied.* Where, as here, the legislature has not defined a word, we give the word its common and ordinary meaning, and, in doing so, may consult English language dictionaries. *Id.* at 1013-14. Turning to the dictionary definition, "mere" has been defined as "nothing more," which appears to imply that the

---

[1] As conceded by Myron, Myron failed to make this claim before the trial court. However, within the parameters of our summary judgment review, we evaluate the parties' claims *de novo* and may affirm under any legal theory supported by the designated evidence.

only act a seller can make to the product to remain within the limited parameters of being defined a seller pursuant to the IPLA and not be considered to fall within the perceived liability-laden status of a manufacturer, is placing a private label on the product. *See* Mere, Merriam-Webster, https://www.merriam-webster.com/dictionary/mere (last visited May 24, 2023). At first glance, Myron fits this description.

[16] However, this limiting statute must be read in conjunction with the more expansive definition of seller comprised in Indiana Code section 34-20-2-4, which is relied upon by Erie Insurance to bring Myron within the purview of the 'manufacturer' definition of the IPLA. *See Rural Elec.,* 716 N.E.2d at 1014 (In seeking to give effect to the legislature's intent, we read an act's sections as a whole and strive to give effect to all of the provisions so that no part is held meaningless if it can be reconciled with the rest of the statute). Indiana Code 34-20-2-4 provides

> If a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction is considered the manufacturer of the product.

[17] As "[s]tatutes relating to the same general subject matter are in *pari materia* and should be construed together so as to produce a harmonious statutory scheme," a combined reading of Indiana code sections 34-6-2-77(b) and 34-20-2-4 indicates that even though Myron solely placed a personalization on the power bank charger, Myron's status as seller may morph into the statutory

manufacturer's status by virtue of doing more than "merely" placing a private label on a product. *Sanders*, 892 N.E.2d at 1252. A high volume of sale or import of a product may quantitatively be acknowledged as doing more than 'merely' personalizing a product. As such, the "principal distributor or seller" of the product who "places a private label on a product" can be considered a manufacturer under the IPLA. *See* I.C. §§ 34-6-2-77; -20-2-4. Accordingly, we must analyze whether Myron may be the principal distributor or seller of the power bank charger.

B. *Indiana Code section 34-20-2-4*

[18] Our supreme court has named Indiana Code section 34-20-2-4 "the domestic distributor exception," and has explained that an action in strict liability can be maintained against a nonmanufacturer defendant only if two conditions are met: (1) the defendant must be a principal distributor or seller over whom the court can hold jurisdiction; and (2) the court must be unable to hold jurisdiction over the actual manufacturer. *Kennedy v. Guess*, 806 N.E.2d 776, 781 (Ind. 2004). If either condition is absent, then the plaintiff's claim fails as a matter of law. *Warriner v. D.C. Marshall Jeep*, 962 N.E.2d 1263, 1267 (Ind. Ct. App. 2012), *trans. denied*.

[19] Thus, to defeat summary judgment in favor of Myron, Erie Insurance had the burden, as the nonmovant plaintiff, to demonstrate that a genuine issue of material fact existed as to whether Myron can be considered a manufacturer

under the domestic distributor exception.[2]  Finding it dispositive here, we need only look to the second condition of the domestic distributor exception, *i.e.*, Erie Insurance needed to come forth with some evidence from which the trial court could reasonably infer that it would be unable to hold jurisdiction over the actual manufacturer, Shenzhen.  Erie Insurance failed to do so.

[20]  Erie Insurance never named Shenzhen as a party in its lawsuit, and it conceded that it never attempted to obtain service of process on Shenzhen.  It appears that Erie Insurance did nothing other than to unilaterally decide that simply because Shenzhen is based in China, no Indiana trial court could exercise personal jurisdiction.  The only evidence designated by Erie Insurance on this issue is the affidavit of a "senior subrogation specialist," who baldly stated that based upon "a diligent search" of the "records of the Indiana Secretary of State," it was discovered that Shenzhen was not registered in the State of Indiana and had no contact with this state.  (Appellant's App. Vol. II, pp. 34-35).  This was wholly inadequate.

[21]  Our supreme court's opinion in *Kennedy* is instructive on this point.  The defendants in that case moved for summary judgment asserting that they were not manufacturers of the allegedly defective product as defined by the IPLA.  In

---

[2] *See, e.g.*, *Kennedy*, 806 N.E.2d at 781 (noting that it was the nonmovant plaintiff's burden to demonstrate genuine issue of material fact on the question of whether defendants were manufacturers under the domestic distributor exception); *see also Kesling v. Kesling,* 83 N.E.3d 111, 118 (Ind. Ct. App. 2017) (in summary judgment context, regardless of which party is the movant, the plaintiff who wishes to circumvent a general rule has the burden to demonstrate the applicability of an exception), *trans. denied*.

response, the plaintiffs alleged that they were entitled to hold the defendants in the lawsuit on a strict liability theory based upon the domestic distributor exception. *Kennedy*, 806 N.E.2d at 780-81. In support of their contention that the exception applied, the plaintiffs designated evidence demonstrating that they had unsuccessfully attempted service on the Hong Kong manufacturer. *Id.* at 781. They designated their receipt of an "affirmation of non-service" indicating that the named foreign corporation was not at the address provided by the plaintiffs and "therefore service was not effected." *Id.* Based on this evidence, the plaintiffs claimed that the manufacturer was "no longer in business and [wa]s not subject to the jurisdiction of this court leaving [the defendant] as principal distributor or seller." *Id.* In additional support of their argument that there was no basis for an Indiana court to exercise personal jurisdiction over the Hong Kong manufacturer, the *Kennedy* plaintiffs also pointed to affidavits designated by the defendants, indicating that there was no evidence that the foreign manufacturer had any contacts with Indiana or had any knowledge that its product was to be sold in Indiana. *Id.* Our supreme court determined that while this evidence, as a whole, was not "especially impressive," it did create a reasonable inference that jurisdiction could not be obtained and it was "potent enough" to demonstrate a genuine issue of material fact on the question of whether the defendants could be considered manufacturers under the domestic distributor exception, and therefore summary judgment for the defendants was inappropriate. *Id.* *See also*, *Kucik v. Yamaha Motor Corp. U.S.A.,* 2010 WL 2694962, *8 (N.D. Ind. July 2, 2010) (in which the Northern District Court of Indiana granted summary judgment to

defendant in part because Kucik "presented [no] evidence that would support a claim that this [c]ourt does not have jurisdiction over Yamaha Motor Co. Ltd.," a Japanese company. "For example, [Kucik] has not pointed to any attempt to serve Yamaha Motor Co. or otherwise bring them into this suit that proved unsuccessful. Thus, the Plaintiff has not produced evidence that is sufficient to create a triable issue of fact on this element of his case."); *Motorists Mut. Ins. Co. v. Mega Lion, Inc.,* 2019 WL 2451086, *3 (N.D. Ind. June 12, 2019) ("Plaintiff asserts that the manufacturer is Chinese, but that is hardly a definitive bar to personal jurisdiction."); *Sandlin v. Bell Sports, Inc.*, 2022 WL 2967714, *5 (S.D. Ind. July 27, 2022) ("Sandlin alleges that, because Ningbo Detai is based in China and has 'no business presence in the United States,' its 'sole link to Indiana is the mere fact that Bell Sports unilaterally distributed its products throughout Indiana' and thus the company 'lacks the prerequisite minimum contacts with the State of Indiana' required for this [c]ourt to exercise personal jurisdiction over it. This conclusory statement falls short of satisfying her burden to demonstrate that no genuine issue of fact exists on this issue.").

[22]  Accordingly, based on *Kennedy*, Erie Insurance needed to designate evidence to support a reasonable inference that the trial court would not be able to hold personal jurisdiction over Shenzhen in order to demonstrate a genuine issue of material fact as to whether Myron could be considered a manufacturer under the domestic distributor exception. *See Kennedy,* 806 N.E.2d at 782. Erie Insurance failed to do so. A mere affidavit averring that, in its own opinion, the

trial court could not obtain jurisdiction is simply not enough.[3]  Summary judgment in favor of Myron on Erie Insurance's strict liability claim was therefore appropriate.[4]

---

[3] The jurisdiction of an Indiana court over a nonresident entity is predicated on Indiana Trial Rule 4.4(A), which grants jurisdiction over an entity doing any business in Indiana.  The purpose of the trial rule is to extend jurisdiction to the boundaries permitted by the Due Process Clause of the Fourteenth Amendment to the federal Constitution.  *North Texas Steel Co., Inc. v. R.R. Donnelley & Sons Co.*, 679 N.E.2d 513, 518 (Ind. Ct. App 1997), *trans. denied, cert. denied*, 523 U.S. 1106 (1998).  The Due Process Clause of the Fourteenth Amendment requires that before a state may exercise jurisdiction over a defendant, the defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  Unlike here, if the defendant's contacts with the state are so "continuous and systematic" that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction, even in causes of action unrelated to the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).  But if the defendant's contacts with the forum state are not "continuous and systematic," like in the instant case, specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state.  *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006).  Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  A single contact with the forum state may be sufficient to establish specific jurisdiction over a defendant, if it creates a "substantial connection" with the forum state and the suit is related to that connection.  *LinkAmerica*, 857 N.E.2d at 967.  But a defendant cannot be brought into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person."  *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174.  Finally, if the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable.  *Id*. at 477.  As the substantial connection of a single act with the forum state is a factual matter, the question as to whether a court can hold jurisdiction over a party is a mixed question of fact and law, which cannot be left to a party's unilateral decision by way of an affidavit.  *See Kennedy,* 806 N.E.2d at 782.

[4] Because we hold that no genuine issue of material fact exists under the first prong of I.C. § 34-20-2-4, we do not need to address Erie Insurance's claim under the second prong, *i.e.,* whether Myron is the principal seller or distributor of the power bank charger.  *See Warriner*, 962 N.E.2d at 1267 (If either condition is absent, then the plaintiff's claim fails as a matter of law).

## CONCLUSION

Based on the evidence before us, we conclude that Erie Insurance failed to establish a genuine issue of material fact that Myron is to be considered the domestic distributor of a power bank charger pursuant to the IPLA.

Affirmed.

Altice, C.J. and Pyle, J. concur